BRAMELL *et al.* v. ADAMS, *Administrator, et al., Appellants;* BRAMELL *et al.* v. COLE *et al., Appellants;* BRAMELL *et al.* v. COLLINS *et al., Appellants.*

### Division One, November 15, 1898.

1. **Will**: LIFE TENANT: POWER OF DISPOSITION. The will construed in *Bramell v. Cole*, 136 Mo. 201, is again considered, and the conclusion there reached is adhered to, namely, that where a life estate is expressly given, a power in the life tenant of absolute disposition of the property will not be implied from the fact that the devise or bequest over is of "what is left" of the property at the death of the first taker, even though it may appear that the property may be diminished in the hands of the life tenant by the uses to which it may properly be applied.

2. **Estoppel**: NECESSARY PROOF. It is necessary for one relying upon estoppel to show that he was induced by acts and conduct of the other party to do something, which, but for such conduct, he would not have done; and, it must also appear that he would be injured by granting the relief sought by the other.

3. **Will**: ESTOPPEL: INJURY: GIFT. One can not be said to be injured by being required to return that to which he was never entitled, and for which he paid nothing, and which was a mere gratuity from another who had no right to make the gift.

4. ———: GENERAL JUDGMENT AGAINST ADMINISTRATOR: LIMITATIONS. Legatees, claiming that under a will certain funds in the hands of the administrator of the life tenant should be paid to them, are not entitled to a general money judgment against the administrator, to be classified and paid out of the *assets* of the estate, *unless* their suit was begun within two years after letters were granted.

5. ———: ———: ———: TRUST FUNDS. But where the life tenant had in her possession property which, at her death, by the will became the property of the remaindermen, it constituted no part of the estate of such life tenant. And this proceeding being a suit in equity by the remaindermen to reach the property itself, the statute requiring demands to be presented within two years does not apply.

6. ———: ———: UNADMINISTERED PROPERTY. And in a suit by the remaindermen to recover such property in the hands of the administrator of the life tenant, it is proper to include in the judgment against the administrator, as a part of the trust funds held by the life tenant during her life, a note for $5,000, payable to the testator, which she had taken possession of, but which she had failed to inventory or charge herself with in her settlements as executrix of his estate.

7. Practice: CONSOLIDATION OF SUITS. Where there are three suits growing out of one will, by the same plaintiffs but against different defendants, and there was but one trial in the lower courts, and the same evidence was received in all the cases, and they were in effect treated as having been consolidated, both in the court below and on appeal, and the pleadings when taken together present all the issues settled by the decree, the appellate court will treat them as if the order for consolidation had been made.

8. Will: "OTHER RELATIVE": LAPSED LEGACY. A devise or legacy to one not related to the testator by consanguinity, will lapse if such legatee or devisee dies before the testator. The words "other relative" as used in the statute do not include those connected with the testator by marriage only.

*Appeal from Johnson Circuit Court.* — HON. W. W. WOOD, Judge,

AFFIRMED.

*O. L. Houts* and *Edmond A. Nickerson* for appellants.

(1) The will of Calvin Atkins gave Margaret A. Atkins a life estate in the property he died possessed of

with absolute power of disposal and any disposition she made of the property in her lifetime was a legal exercise of the power given her and vested a legal title in anyone to whom she gave it. *Harris v. Knapp*, 21 Pick. 416; *Davis v. Boggs*, 20 Ohio St. 550; *Turner v. Timberlake*, 53 Mo. 371; *McKenzie's Appeal*, 19 Am. Rep. 525; *Reinders v. Koppelmann*, 68 Mo. 482; *Scholl's Appeal*, 2 Atl. Rep. 538; *Hazel v. Hagen*, 47 Mo. 277; *Harbison v. James*, 90 Mo. 411; *Lewis v. Pitman*, 101 Mo. 281; *Silvers v. Canary*, 9 N. E. Rep. 904; *Flanagan v. Flanagan*, 8 Abb. N. C. 413; *Clark v. Middleworth*, 82 Ind. 240; *Fort v. Saunders*, 72 Mo. 620; *Small v. Field*, 102 Mo. 104. (2) The plaintiffs by their advice and active aid to Margaret A. Atkins, when she divided the property among them in her lifetime, and by their accepting a large amount of property themselves, and their acquiescence in its distribution, are estopped and precluded from denying that she had the power of disposition under the will or that the defendant, A. W. Cole, did not take a valid title to the property she gave him. 2 Herman on Estop., secs. 765-766; *McCreary v. Remsom*, 54 Am. Dec. 194; *Alleman v. Manny*, 44 Mo. App. 4; *Payne v. Payne*, 5 Mo. App. 188; *Benedict v. Murlgory*, 42 Am. Dec. 230; *White v. Rowl*, 44 Am. Rep. 731; *Caldwell v. Anges*, 77 Am. Dec. 515; *Maple v. Kussart*, 9 Am. Dec. 769; *Howles v. Bacon*, 56 Am. Dec. 371; *Dean v. Kimball*, 80 Am. Dec. 163; *Brown v. Brown*, 86 Am. Dec. 406. (3) Plaintiffs, legatees, not having presented their claim within two years are now barred by the statute of non-claim. (*a*) In an express trust, the statute of non-claim commences to run from the time that the trustee begins to openly declare that he holds adversely to the *cestui que trust*. *Kane v. Bloodgood*, 7 Johns. Ch. 90; *Smith v. Records*, 52 Mo. 581; *Record's Adm'r v. Watkins*, 56 Mo. 553; Angel on Limitations, 513; *Keeton's Heirs v.*

*Keeton's Adm'r*, 20 Mo. 530. (*b*) In implied trusts the statute of limitations commences to run from the time that the beneficiaries have knowledge that the right of action accrues. *Records v. Watkins*, 56 Mo. 544; *Atty.-Gen. v. Brigham*, 7 N. E. Rep. 851; *Johnson v. Smith*, 27 Mo. 591; *Smith v. Records*, 52 Mo. 581; *Record's Adm'r v. Watkins*, 56 Mo. 553; *Keeton's Heirs v. Keeton's Adm'r*, 20 Mo. 531; *Nichols v. Sharon*, 49 Ark. 75; *Patterson v. McCann*, 39 Ark. 577; *Fowler v. True*, 76 Mo. 43; *Hoffman v. Hoffman's Adm'r*, 126 Mo. 486; *Morgan v. Grimes*, 67 Mo. App. 616. (*c*) Where a trust fund has been by the trustee converted to his own use, if it can no longer be identified as a separate and independent fund of value, the right to follow the specific funds into the hands of the trustee's administrator is gone. *Atty.-Gen. v. Brigham*, 7 N. E. Rep. 851; *Hart v. Bulkley*, 2 Edw. Ch. 70; *Mills v. Post*, 7 Mo. App. 591; Bailey on Agency, 83, 84; *Whitcomb v. Jacobs*, 1 Sack, 160. (4) Tressie M. Fisher, the minor heiress of Mrs. Frances E. Fisher, deceased, is entitled to one eleventh part of the estate of Calvin Atkins, deceased, as a legatee under the provisions of his will. R. S. 1889, sec. 8879; 2 Bouvier's Law Dict., p. 433; *Ib.*, 1st vol., p. 97.

*A. B. Logan* and *James Parks & Son* for respondents.

(1) An absolute power of disposition over property, conferred by will, and not controlled by any provision or limitation, amounts to an absolute gift of the property; but where a life estate only is expressly given, the rule is otherwise. *Rubey v. Burnett*, 12 Mo. 1; *Gregory v. Cowgill*, 19 Mo. 415; *Wommack v. Wommack*, 58 Mo. 456; *Lewis v. Pitman*, 101 Mo. 281. And where a life estate is expressly given by a will,

the same will not be converted into a fee by mere words of implication, unless the manifest general intent of the testator requires it. *Gregory v. Cowgill*, 19 Mo. 415; *Lewis v. Pitman*, 101 Mo. 281. And where an express life estate is created by the will, an added power of disposition does not convert it into a fee. *Lewis v. Pitman*, 101 Mo. 281; *Munro v. Collins*, 95 Mo. 33. (2) The use in the will of such phrases as "what is left," etc., does not raise or imply the power of disposition. *Bramell v. Cole*, 136 Mo. 201; *Gregory v. Cowgill*, 19 Mo. 415; *Riggin v. McClellan*, 28 Mo. 23; *Giles v. Little*, 104 U. S. 291; *Goudie v. Johnson*, 109 Ind. 427; *Mathers v. Patterson*, 30 Ala. 404. (3) (*a*) A *cestui que trust* can not bring an action at law against a trustee to recover for money had and received while the trust is still open, but when the trust has been closed and settled, the amount due the *cestui que trust* established and made certain and nothing remaining to be done but to pay over the money, such an action can be maintained. If the trust estate consists in stocks or specific property, a bill in equity is necessary to enable the *cestui que trust* to recover it. *Butrick v. King*, 7 Metc. 20; *Johnson v. Johnson*, 120 Mass. 465; *Frost v. Redford*, 54 Mo. App. 353; *Gunter v. Janes*, 9 Cal. 643. (*b*) A party seeking to enforce a trust against the administrator of a trustee is compelled, from the complex nature of the case, to ask relief in a court of equity. *Gunter v. Janes*, 9 Cal. 643. (4) Property wrongfully purchased by the trustee may be followed into the hands of any one who takes it with notice of its trust character. *Darling v. Potts*, 118 Mo. 506; *Scriver v. Dietz*, 84 Cal. 297; *Silvers v. Canary*, 114 Ind. 129. (5) If, at the time of his death, the trustee was in possession of the trust fund, or other property into which he may have converted it and such fund or other property comes into posses-

sion of his administrator, such administrator holds said trust fund, upon the same terms the trustee held it and the relation of trustee will be added to that of administrator by virtue of his successorship. Such fund or other property would constitute no part of the testator's assets and his administrator would hold it in his capacity, not as administrator but as succeeding trustee. *Lathrop v. Bampton*, 31 Cal. 17; *Trecothick v. Austin*, 4 Mason, 29; *Knight v. Knight*, 75 Ga. 386; *White v. Thompson*, 45 Me. 445; *Farrelly v. Ladd*, 10 Allen, 127. (6) The statute of limitations was never intended to apply to any cases of trusts or trust property in the hands of executors or administrators, but simply to property belonging to them as assets of the testator. *Trecothick v. Austin*, 4 Mason, 16; 2 Woerner's Law of Adm'r, p. 848. (7) If the trust property can still be traced and identified, the *cestui que trust* may maintain an action against the administrator to enforce the trust without presenting claim against the estate of the trustee, since the *cestui que trust* in such case seeks his own property and not to enforce a claim against the estate and property of the decedent. *Roach v. Caraffa*, 85 Cal. 436; *Vandeever v. Freeman*, 20 Tex. 333.

WILLIAMS, J.—These cases were tried together in the circuit court and were submitted on the same evidence. The decree rendered is alike in *each* case, and was, apparently, intended to include the *issues* involved in *all*. The suits, for all practical purposes, were consolidated and treated as one.

The rights of the parties grow out of and depend upon the will of Calvin Atkins, deceased, which was admitted to probate in Moniteau county in the year 1884. The material parts thereof are as follows:

"I will that all my just debts be paid at as early a date as practicable, and the remainder that is left to go to my beloved wife, Margaret A. Atkins, during her natural lifetime, she to have the entire control of the same, it consisting of the following real estate: The west half of the northeast quarter of section 23, in township forty-four, range two, west, containing eighty acres more or less, it being the same we now reside upon, and all other lands that I may have any claim to and upon, and also all moneys, cash, notes or bonds, and evidence of debt of every description whatsoever and effects of all kinds to go to her, for her to have full control of the same as long as she lives, and that after her death, what is left, to go to A. W. Cole and Louisa Bramell and her children, legal heirs of her body, share and share alike, that is to say, the said A. W. Cole and Louisa Bramell, wife of Washington Bramell, are to share equal to any of the children of the said Washington and Louisa Bramell, and no more; and I further revoke all former wills of every description whatsoever, and publish this as my last will and testament; and my will is that my beloved wife, Margaret A. Atkins, shall act as my executor of my entire estate, both real and personal, of every description whatsoever."

The will is dated August 21, 1866. Atkins died in 1884, and his widow, Margaret Atkins, qualified as his executrix. She made final settlement, after publication of the proper notice, on the tenth of May, 1886, showing in her hands $39,210.39.

She also held what is called the "Price note" for $5,000, which she failed to inventory, and hence it was never charged to her in her administration accounts, and is not included in the above balance. Mr. Atkins deposited this note as collateral security for an indebt-

edness, which he owed; and, when the inventory was made, it was still held by his creditor. Subsequently, the debt was paid by the executrix, and the "Price note" delivered to her. She took credit for the payment, in her settlement with the probate court, but did not charge herself with the note.

The widow retained possession and control of the money and other property of the estate after her discharge as executrix, and managed and invested it as she deemed proper.

Atkins, at the time of his death, held a note for something over $22,000, secured by a deed of trust upon some land in Henry county, called the "Rule farm." Mrs. Atkins had the land sold under the deed of trust and took the title in her own name. She also bought, with the funds of the estate, several other tracts of land and had the same conveyed to her personally.

In 1891, a short time before her death, she conveyed eighty acres of the "Rule" land to plaintiff, Wesley O. Bramell; a like quantity to Edward G. Bramell; and a third eighty to Louisa and Washington Bramell, for life, and after their death to the children of Louisa. She held the title to the remainder of the "Rule" land in her own name when she died.

Mrs. Atkins also conveyed, or caused to be conveyed, to defendant Cole, several tracts of land in Johnson county, aggregating about four hundred acres. He in turn gave eighty acres of that deeded to him to his son-in-law, defendant Collins.

All of the real estate above mentioned was purchased with the funds of the Atkins estate. The transfers to Cole and to the Bramells were without consideration, and merely intended as gifts. The Bramells, in a suit in the circuit court of Henry county, were decreed to hold the title to that part conveyed to them,

in trust, for the remaindermen provided for in the will of Calvin Atkins, deceased.

Mrs. Atkins also made small presents, from time to time, of money or personal property, to some of the plaintiffs and likewise to defendant Cole. He was the principal beneficiary of these disbursements.

She gave him what is spoken of by the witnesses as the Bowen-Hinkle notes. He collected them; paid $1,200 out of the proceeds for one of the tracts of land conveyed to him; divided part of the remainder between his two daughters and used himself what was left after this division.

Mrs. Atkins died in 1892. Defendant Adams became her administrator and took into his possession notes amounting to about $15,000. These were payable to her, but represented investments which she had made of the funds of the Atkins estate.

She left two children surviving her, plaintiff Louisa Bramell and defendant Dr. A. W. Cole. They are her only heirs and were born of a marriage prior to that with Atkins. *He* had no children.

Louisa Bramell and seven of her children join as plaintiffs in these suits, making all persons interested parties thereto. Their claim, briefly stated, is that the land to which reference has been made was purchased with assets belonging to the estate of Calvin Atkins, deceased, and that the notes in the hands of Adams, administrator of the widow, stand for money which came from the same source.

They assert that, upon the death of Margaret Atkins, they, jointly with defendants Cole and Estes, became entitled, as remaindermen under the will of her husband, to the fund held by her for life, and seek to follow it into the property in which it was invested by her.

Plaintiffs brought three separate actions. The one, in which Adams is a defendant, is to reach assets in his hands, which, plaintiffs say, were trust funds held by his intestate and constitute no part of her estate, but really represent property of the remainder-men. That against Cole seeks a construction of the will and a decree, declaring that the land conveyed to him, as well as that retained by Mrs. Atkins, is held by the parties having the legal title, in trust for plaintiffs and the others who were to take at her death; and the one against Collins was for a like purpose as to the land given him by Dr. Cole, his codefendant.

The decree entered in each case is identical. It embraces all the matters litigated in the three suits. The court declared that Mrs. Atkins was a tenant for life; took an account of the notes and effects received by her under the will; decreed to the remaindermen the title to the land which she held at her death, and credited her with the amount invested therein. This left a balance of the *corpus* of the estate, which came into her hands, of $15,076.14, which was declared a lien upon the money and notes in the hands of her administrator. He was ordered to pay said amount into court for distribution among the remaindermen. An additional lien in their favor was given upon the several tracts of land conveyed to Cole and Collins for so much of the money of the estate as was invested in such tracts respectively, but the money and notes in the hands of the administrator were made *primarily* liable. The decree further provided for distribution of the money when collected, among the parties found to be remaindermen, Dr. Cole, one of them being charged in the distribution with $2,500, on account of money received by him belonging to the trust funds, and used, with consent of the life tenant, for his own benefit.

The cases come to this court on defendants' appeal.

I.    The first step in the decision of these cases is to determine the proper construction of the will of Calvin Atkins, deceased.    The litigants radically differ concerning the interest or estate, which the widow took in the property of the testator, and her power to dispose of the same. . The claim of the appellants is that the will gave her a life estate, and that the words "what is left" in the gift over, raise an implied power in her of absolute disposition. · If this is true, the decree below can not stand.

This will was construed in the case of *Bramell v. Cole*, 136 Mo. 201, after the trial of the present suits in the circuit court.    MACFARLANE, J., speaking for the court, said:

"I take the rule in this State to be well settled that in case a life estate is expressly given, a power of absolute disposition will not be implied from the fact that the devise or bequest over is of what remains, or what is left of the property at the death of the first taker, wherever it appears also that the property may be diminished in the hands of the life tenant by the uses to which it may properly be applied.    The use of such words only contemplates that some of the property may not exist at the death of the first devisee........ By the will in question the testator not only devised to his wife real estate, but he also bequeathed to her all money, cash, notes or bonds and evidences of debt of every description whatsoever, and also all his personal property and 'effects of all kinds.'    Personal property and effects being thus distinguished from money, notes, bonds, etc., must have included such perishable property as one would have in his residence and upon the land upon which he resided, and the words 'what is left'

as used in the will, can apply to such personal property." Again: "In the most careful and judicious management of an estate like this, losses are liable to occur. By a devise over of 'what is left' the testator evidently had in mind such possible losses and did not intend that the legatee for life should be chargeable with them." The court declared in conclusion: "By the words 'what is left' the testator intended to include in the bequest over, the entire property which should be in the hands of the life tenant at her death, whether it had been diminished by losses or increased by profits, or whether it consisted of personal property or had been invested in real estate."

We have been asked to review that decision. A re-examination of the question has satisfied us that the conclusion reached in that case is correct. We adhere to our previous ruling.

II.   The appellants next insist that plaintiffs have estopped themselves by their acts and conduct from questioning the power of Mrs. Atkins under the will to dispose of the property, and from denying that Cole acquired a valid title to that part which she *gave* him.

A careful examination of the evidence fails to disclose any solid basis in the testimony for this claim. It is true that Mrs. Atkins (largely with the advice and assistance of Dr. Cole), managed the trust funds during her lifetime in her own way. She made investments in real estate and took the title thereto in her own name. She loaned the money upon such security as she deemed proper. Her right to do this was never challenged by plaintiffs, nor were they ever asked to consent thereto. She and defendant Cole simply *assumed* that the power existed and acted accordingly. She loaned money to each of the two plaintiffs, Wesley O. and Edward G. Bramell, and took a deed of trust

from each upon land in Johnson county to secure the sum loaned him. Later she released these liens and the Bramells, at her direction, conveyed the land to defendant Cole. Mrs. Atkins then made a deed to each of them for eighty acres of the "Rule" farm in Henry county, and also one to plaintiff, Louisa Bramell, for a like quantity.

It was afterwards decided in *Bramell v. Cole, supra,* that they held the title to this Henry county land in trust for the remaindermen, and so it was, that these conveyances amounted to nothing. She made from time to time small gifts of personal property and money to some of the plaintiffs, but it does not appear that they were informed that she claimed to do this by authority of the will. Doctor Cole has no ground of complaint upon this score, as his receipts from this source were much greater than those of any of the others. It also appears that she had some property of her own from which these presents *might* have been made. The year before she died the parties joined in having an appraisement made of the land, with the view of dividing it but this partition was never consummated. Defendant Cole also testified that he refused to receive a deed for any of the land until provision was likewise made for his sister, which was done.

If we give the full force and effect contended for by appellants to *every* fact and circumstance tending to show that plaintiffs recognized the power of Mrs. Atkins to make disposition of the property, and overlook the fact that some of the parties were minors, and refuse to consider the testimony that most of plaintiffs were ignorant of the contents of the will until after her death, we still have two essential elements of an estoppel entirely lacking.

To constitute an estoppel by conduct there must be, "*First,* an admission inconsistent with the evidence

proposed to be given or the claim offered to be set up; second, an action by the other party upon such admission; third, an injury to him by allowing the admission to be disproved." *Taylor v. Zepp*, 14 Mo. l. c. 488; *Acton v. Dooley*, 74 Mo. 63; *Blodgett v. Perry*, 97 Mo. 263.

It is necessary for one relying upon an estoppel to show that he was induced by acts and conduct of the other party to do or omit something, which but for such conduct, he would not have done. He must have been induced to take a certain course by something said or done by his adversary. Dr. Cole stands in no such attitude towards these plaintiffs. He knew far better than they what the will of Calvin Atkins contained. He was familiar with its terms and provisions. He was the moving spirit in his mother's transactions with the property of the estate. Plaintiffs simply acquiesced in what he did or advised. *They* may be said to have been influenced by *his* conduct, not *he* by *theirs*. *Acton v. Dooley*, 74 Mo. 63.

Neither is it perceived how he is injured by granting the relief sought. He paid no consideration for the property of the estate transferred to him. Nothing that *he* invested in it is taken from him. He was the recipient of gifts, which the donor was not empowered to make. He is only required to return that to which he was never entitled and which was a mere gratuity to him. He parted with nothing to obtain it, and it is no hardship when he is required to give it up. The decree however does not require him to surrender by any means all that he received. We can not see that he will be in any worse position, after returning that which *cost him* nothing, than he was before receiving it. We find nothing akin to an estoppel in the facts of this case.

III.    Defendant Adams, administrator of the estate of Margaret Atkins deceased, pleads the special limitation of two years contained in section 184 of the administration law.    The statute, after providing for the exhibition, allowance and classification of demands against estates, declares that "all demands not thus exhibited and presented to the court for allowance in two years shall be forever barred," with a saving clause in behalf of persons under certain disabilities.    Plaintiff's suit was not commenced within two years.    The statute is invoked as a bar.

It is clear that if the result of this litigation is to be a general money judgment against the administrator to be classified and paid out of the *assets of the estate*, plaintiff's suit comes too late.    The fact that it was begun in the circuit court and that the claim grew out of a trust fund could not save it from the operation of the statute.

This is not, however, a proceeding for a money judgment in the ordinary form against the estate.    Plaintiffs are not trying to enforce a personal liability of the intestate, or to establish a demand, which existed against the deceased.    They do not ask a judgment to be paid out of the assets of the estate in the order of their classification.    They proceed upon an entirely different theory.

Mrs. Atkins had in her possession property to which plaintiffs and the other remaindermen became entitled at her death.    The moment she died, it became theirs.    She held it in trust.    It constituted no part of her estate.    While she had changed the investments and form of the securities, they still remained trust property.    There was no transformation of the character in which she held them.    Her administrator acquired no rightful title thereto as against the remaindermen.    He could not compel plaintiffs to come in as

*general* creditors and share with others in the same class in the distribution of their own property.

It was clearly shown that the assets in the hands of the administrator were derived from the trust funds. This is a suit in equity to reach the *property itself*, not to establish a *personal liability* or *debt* incurred by the deceased. If an administrator should assume to take and hold personal property of another, it could not be claimed that the two years' limitation would be an answer to a replevin suit against him therefor.

A similar question to the one under consideration here was before the Supreme Court of California in *Gunter v. Janes*, 9 Cal. 658. The court said: "Another point urged by the counsel of the defendant is, that Gunter did not present his account to the administrator for approval or rejection as the probate act requires. But to this, it is a sufficient answer, that the scope and purpose of the bill of Gunter was not the recovery of a *debt* against the estate, but to enforce his right to trust funds that had found their way into the hands of the administrator. He was compelled, from the complex nature of the case, and the kind of relief sought, to go into a court of equity. The trust funds properly constituted no part of the assets of the estate. Where the executor or administrator has property which belongs to another, the owner is not required to present his account as if he were a creditor. The claimant of specific *property*, and not of a *debt* can not properly be called a *creditor*, within the meaning of the probate law." Angell on Limitations [6 Ed.], section 170, lays down this rule: "The limitation is strictly applicable to demands of creditors of the deceased, and does not reach claims on specific property which was held in trust by the deceased for other persons, and which has come into the hands of an executor or administrator." See, also, *Trecothick v. Austin*, 4 Mason, 16; 2 Woerner's Probate

Law, sec. 402, p. 848; *Fallon v. Butler*, 21 Cal. 24; *Bank v. Hummel*, 8 L. R. A. 788; *Snorgrass v. Moore*, 30 Mo. App. 232.

Justice STORY in *Trecothick v. Austin* said: "The *cestui que trust* is not, in such case, strictly and merely a creditor of the testator, and the statute bars only claims of a pecuniary nature against the testator, not such as become personal trusts in the hands of the executor."

Some of the language used by Judge ADAMS, in *Smith v. Ricords*, 52 Mo. 581, gives countenance to plaintiff's contention. The discussion of this question was not necessary to the decision of that case. When it came back to this court upon a second appeal, the affirmance of the judgment below was placed by Judge WAGNER upon the sole ground that the action was barred by the general statute of limitations. The special statute in favor of administrators was not mentioned or considered. *Ricords v. Watkins*, 56 Mo. 553.

We do not think the special statute of two years in favor of administrators applies in this case.

A very different question would be presented, if the fund could not be traced and plaintiffs had to come in as general creditors of the estate. *Att'y-Genl. ex inf. v. Brigham*, 7 N. E. Rep. 851.

IV. The circuit court included, as part of the trust funds held by Mrs. Atkins, the "Price note" for $5,000 hereinbefore referred to. This was not charged to her as executrix of her husband's estate in her settlements with the probate court. Appellants, in a supplement to their brief, assign as error, this action of the trial court, contending that the final settlement is conclusive and only the balance shown thereby can be considered in determining the amount received by the life tenant. If this was an attempt to charge her as executrix with amounts omitted from her settlements, the point might be well taken. It is not a suit upon

her bond; neither is it based upon any dereliction of duty upon her part in the administration of the estate. Her final settlement is not called in question. The correctness of her accounts is not in issue. The present proceeding could be as well maintained if another had been the executor or administrator. No personal liability against her growing out of the administration is sought to be established. The suit is to reach certain assets into which she converted the trust funds. She held the note mentioned in this paragraph, as part of the property which under the will she was to control during her life. It did not lose its character as trust property, nor were plaintiffs deprived of their title to it, because it did not pass through the settlements of the executrix. Their title to the note or its proceeds was not determined adversely to the plaintiffs in the final settlement. SHERWOOD, J., in *Nelson v. Barnett*, 123 Mo. 570, said: "But a judgment of the probate court on a final settlement of an administrator is, of course, conclusive only *as to matters therein embraced. In order that any matter can be said to have passed in rem judicatam, it must have been tried and adjudicated by the court.*" *Snorgrass v. Moore*, 30 Mo. App. 232.

V. Appellants say that the entire subject-matter in litigation should have been embraced in one bill in equity, and complain that what should have been a single suit has been improperly split into three parts. The point is also made that the decree is rendered "as if the subject-matter and the rights of all the parties were involved in one suit," and "when applied to the cases separately it does not respond to the issues of either."

There was but *one* trial in the lower court. The same evidence was by consent received in all the cases. They were in effect *treated* as one suit. They were for

all practical purposes consolidated, although no formal order was made for that purpose.    They have been argued together here.    Appellants have enjoyed every right that could have arisen from the union of all the matters in one bill.    The pleadings taken together present all the issues settled by the decree.    *We* will treat the suits, in passing upon *this* objection, as one case, as the *parties* have done for all *other* purposes and as if an order of consolidation had been made.

We can not see that appellants have been injured in any manner by the form of procedure, and, in the absence of *material* error, we are powerless under the statute to reverse, even though there may have been a departure from technical precision in the matter complained of by appellants.

VI.    The court held that defendant, Tressie Fisher, was not entitled to any part of the fund, and this ruling is before us for review.    Her mother, who was given by the will an equal share with the other remaindermen, died during the life of the testator.    The legacy to her lapsed, unless it was preserved in favor of her only child, the defendant named above, by section 3971 of the statute of 1879, which is as follows: "When any estate shall be devised to any child, grandchild or other relative of the testator, and such devisee shall die before the testator, leaving lineal descendants, such descendants shall take the estate, real or personal, as such devisee would have done in case he had survived the testator."

Margaret Atkins was a widow with one son and one daughter, when she married Atkins.    Mrs. Fisher, the legatee, was the child of this daughter.    She was not related to the testator by consanguinity.

We do not think she comes within the statute. The use of the words "child" and "grandchild" excludes the idea that one only connected by marriage was

meant by "other relative." Several of the states have like provisions. "It is held, under these statutes, that the term 'relative' applies only to relation by consanguinity." 2 Woerner's Law of Administration, p. 939, and authorities cited in note; 20 Am. and Eng. Encyclopedia of Law [1 Ed.] 738.

"It has long been settled that a bequest to 'relations' applies only to those who, by virtue of the statute of distributions would take property as next of kin." Anderson's Law Dictionary, p. 870. We think the word is used in the same sense in this statute.

VII. The decree gives evidence of careful preparation and full consideration of all the matters at issue. It is more favorable to appellants than they could ask under the construction placed upon the will by this court in *Bramell v. Cole, supra.*

Mrs. Atkins was regarded by the circuit court as a life tenant, having the right to dispose of the income, and only the *corpus* of the fund was taken into the accounting. Upon the other hand, this court held: "By the words 'what is left' the testator intended to include in the *bequest over*, the *entire property* which should be in the hands of the life tenant at her death, whether it had been diminished by losses or *increased by profits*, or whether it consisted of personal property or had been invested in real estate."

The plaintiffs are not complaining, and the defendants have no ground to do so. A judgment of affirmance will accordingly be rendered. BRACE, P. J., and ROBINSON and MARSHALL, JJ., concur.