Elizabeth McCOMB and Helen Zeikle, Executrices of the Estate of Bessie B. Lyons, Deceased, Plaintiffs-Respondents,

v.

James Elliott LYONS II et al., Defendants-Appellants,

Sallie Bradley and Grace Ramey, Defendants-Respondents.

No. 56371.

Supreme Court of Missouri, Division No. 2.

Nov. 13, 1972.

Strop, Watkins, Roberts & Hale, by Dan Hale, St. Joseph, for defendants-appellants.

William Aull, III, Lexington, for defendants-respondents.

HOUSER, Commissioner.

This is an action to construe the will of Bessie B. Lyons, Deceased. Plaintiffs are her executrices. Defendants are the three sons and heirs of James Elliott Lyons, Jr. and Sallie Bradley and Grace Ramey. James Elliott Lyons, Jr. was named in the will as a contingent residual beneficiary as to one-fourth of the estate. Sallie Bradley and Grace Ramey are the surviving sisters of testatrix. James Elliott Lyons, Jr. predeceased testatrix. The circuit court ruled that the residuary gift to him lapsed; that testatrix died intestate with respect to one-fourth of the residue of her estate and that Sallie Bradley and Grace Ramey, as

sisters and heirs-at-law of testatrix, are entitled to the one-fourth of the residue of the estate claimed by the heirs of James Elliott Lyons, Jr. The three heirs have appealed.

Bessie B. Lyons' will made a number of specific bequests of cash to various persons and institutions; provided for devolution of some of these legacies in case the beneficiary or beneficiaries should predecease testatrix, and further provided that in the event any of the named legatees should predecease testatrix and the will contained no specific provision for other disposition of the bequests made to such deceased legatees the lapsed specific legacies should become a part of the residuary estate and be disposed of under the residuary clause. The residuary clause devised and bequeathed the residue of her estate to her husband George for life and upon his death as follows: one-fourth to Earle (brother of George) if Earle survived George and if not to Fanny, daughter of Earle; one-fourth to James (brother of George) if James survived George and if not to James Elliott Lyons, Jr. (son of James); one-eighth each to four named nieces of testatrix, but if any of the nieces predeceased George then to the survivor or survivors of said four nieces.

George and Bessie had no children. George died in 1953, survived by his widow Bessie, his brother James and James' son James, Jr. James died in 1955. James, Jr. died in 1965, survived by his sons James II, Charles and Paul, defendants-appellants herein. Bessie died in 1966, survived by her sisters Sallie Bradley and Grace Ramey (co-defendants in this action). Bessie was unrelated by blood to James, Jr. and his heirs.

 The construction placed upon the will was correct. In clear and unambiguous language testatrix devised one-fourth of her estate to James if James survived George and if not to James, Jr. Both James and James, Jr. survived George but both died before testatrix died, and the will

does not provide for the contingency arising upon the failure of James, Jr. to survive testatrix. Under the common law, where a devisee dies before the testator no title or interest in the property does or can vest in the devisee, a dead person, for a conveyance to a dead person is void. James and James, Jr., being dead, the provisions in their favor were void, Stolle v. Stolle, Mo.Sup., 66 S.W.2d 912, 914 [4], and their devises and bequests lapsed. Bramell v. Adams, 146 Mo. 70, 47 S.W. 931; Gregory v. Borders, 345 Mo. 699, 136 S.W.2d 306 [7]; State ex rel. Cowden v. Knight, 338 Mo. 584, 92 S.W.2d 610, 611 [2]. The anti-lapse statute[1] does not save the situation and prevent the lapse of the devise to James, Jr. because he was not a "relative" of testatrix within the meaning of the statute, Gregory v. Borders, supra, that term being reserved for relatives by consanguinity and not by marriage. In re Knighten's Estate, 344 Mo. 246, 125 S.W. 2d 863 [1], and cases cited l. c. 864.

Appellants' position is that Bessie's and George's wills, both drawn by the same scrivener, both containing substantially the same reciprocal provisions in behalf of the other's relatives and both executed on the same day before the same witnesses, are mutual wills executed for the purpose of carrying out a common purpose, bespeaking an implied contract between Bessie and George that they execute mutual and reciprocal wills that should be irrevocable; an agreement that each would abide by the provisions of the other's will so that ultimately they would leave the residue of their properties equally to the four different categories of relatives on both sides of their families; that when George died the one-fourth interest in the remainder of Bessie's property vested in James, Jr. under Bessie's will, subject to being divested by James, Sr. surviving Bessie (which did not occur); that Bessie's conduct following George's death, in not revoking her will, and in requesting of her attorney a list of the specific bequests made in George's will with an expression of intent to pay the same when it developed that there were insufficient funds in his estate to pay them, shows her intention to execute her husband's will, supports the conclusion that Bessie and George made an agreement that the wills be irrevocable.

■■ In order for a court to rule that these reciprocal wills were not ambulatory but were made pursuant to a contract between Bessie and George to execute mutual *irrevocable* wills "the court must have full and satisfactory proof of the agreement." "[T]he most indisputable evidence of the agreement" is required. The agreement must be "clearly and definitely established." (Quotations approved in Wimp v. Collett, Mo.Sup., 414 S.W.2d 65, 70.) It is not sufficient merely to show that the wills were made pursuant to *some* agreement. Plemmons v. Pemberton, 346 Mo. 45, 54, 139 S.W.2d 910, 916. There must be a definite agreement, fair and just and certain in its terms and subject matter, to dispose of the property as in the wills provided; there must be a specific agreement that neither party will revoke his will— that they shall remain in force until the death of both testators; the agreement must be based upon a sufficient consideration, and the existence of such a contract must be shown by clear, cogent and convincing evidence. Wimp v. Collett, supra, 414 S.W.2d l. c. 75. Direct evidence is not necessary; proof of a testamentary compact may be supplied by evidence of admissions made by the testators or of facts and circumstances, and the relations of the parties, of such a nature as to give rise to an implication that such an agreement was made. Plemmons v. Pemberton, supra, 139 S.W.2d l. c. 916. The mere fact, however, that the two wills "upon their face, purport

---

1. Section 474.460, RSMo 1969, V.A.M.S.: "When any estate is devised to any * * relative of the testator, and the devisee dies before the testator, leaving lineal descendants, the descendants shall take the estate, real or personal, as the devisee would have done if he had survived the · testator."

to be reciprocal and mutual wills and contain similar or identical provisions and that they were drawn by the same scrivener, executed at the same time and before the same witnesses, with full knowledge, on the part of each testator, of the contents of the other will, and were clearly made for the accomplishment of a common purpose, although such circumstances are to be regarded as some evidence that they were made in pursuance of an agreement * * *, is not sufficient evidence of a contract to make wills to remain unrevoked at the deaths of the testators." Idem.

 The evidence in this case does not rise to the high degree of proof required in such cases. The wills contain no express language proscribing revocation. The mutual and reciprocal provisions of the will constitute some evidence in support of appellants' position but, as we learn from Plemmons v. Pemberton, supra, that is not enough. Neither the scrivener nor any other third persons testified concerning statements or admissions made by George or Bessie bearing upon the existence of an agreement of irrevocability. No surrounding circumstances were shown indisputably demonstrating that such an agreement existed. That Bessie may have personally paid the bequests made in George's will can be attributed to other motives than an intention to carry out a contract of irrevocability. The fact that Bessie for 20 years after George's death did not change the dispositive provisions of her will is not a fact solely attributable to the existence of such an agreement. Indeed her failure to amend her will by codicil specifically naming and directly bequeathing to appellants when upon the death of their father James, Jr. the bequests to the latter lapsed, may be taken as an indication that there was no such agreement and that there never was any intention that these appellants take.

In the cases cited by appellants in which courts have found the existence of testamentary contracts of irrevocability (Shackleford v. Edwards, Mo.Sup., 278 S.W.2d 775; Wimp v. Collett, supra; Glueck v. McMehen, Mo.App., 318 S.W.2d 371) there were reinforcing and supplementary admissions made by the testators prior to, contemporaneously with, or subsequent to the executions of the wills, or other facts and circumstances pointing unmistakably to the existence of such a contract. As indicated, that proof is lacking here, as a result of which the judgment must be and is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.