**In the Matter of the ESTATE OF Joseph B. BLOOMER, Deceased.**

**Dave BLOOMER, Frances Chatten Ardison, Arthur Limist Chatten, William K. Bloomer, Charles Bloomer, Arnold A. Bloomer and Laura E. Miranda, Appellants,**

v.

**Ruth Hays CAPPS, Respondent.**

**No. 62367.**

Supreme Court of Missouri, En Banc.

Sept. 8, 1981.

Edward R. Jayne, Russell E. Steele, Kirksville, for appellants.

Vance Frick, Kirksville, for respondent.

SEILER, Judge.

This appeal is by the heirs at law of Joseph B. Bloomer, deceased, from the judgment of the trial court that they were not entitled to the proceeds of his estate. The appeal was originally taken to the court of appeals, western district, which affirmed the judgment, but the case was transferred to this court upon application of appellants. We consider the case as though here on original appeal. Mo.Const. art. V, § 10. Portions of the court of appeals opinion will be incorporated in this opinion without the use of quotation marks.

This appeal involves the application to the facts of this case of the provisions of § 474.420, RSMo 1978 [1] which are as follows:

"If after making a will the testator is divorced, all provisions in the will in favor of the testator's spouse so divorced are thereby revoked but the effect of the revocation shall be the same as if the divorced spouse had died at the time of the divorce. With this exception, no written will, nor any part thereof, can be revoked by any change in the circumstances or condition of the testator."

The facts are stipulated. The essential facts are these: On September 8, 1952, while a resident of Collinsville, Illinois, Joseph B. Bloomer made and executed his last will and testament in which he devised and bequeathed to "Mrs. Ruth Hays, Yarrow, Adair County, Missouri", all of his property. On April 19, 1954 he married Ruth Hays (now Ruth Hays Capps). On September 22, 1954, Mr. and Mrs. Bloomer entered into a property settlement and on November 12, 1954, they were divorced. Thereafter she remarried and became Mrs. Capps.

Mr. Bloomer died on October 27, 1969. His estate has been the subject of legal dispute since 1970. *See Matter of Estate of Bloomer*, 528 S.W.2d 784 (Mo.App.1975). According to the revised final statement in the estate, filed October 19, 1978, there remains $15,693.01 for distribution. This appeal arises from the trial court's order overruling appellants' objections to the revised final settlement and the proposed order of distribution which recognizes respondent as the sole beneficiary.

The question presented in this case is a narrow one. Joseph Bloomer made respondent, Ruth Hays Capps, a beneficiary in his will prior to their marriage. They were then married and divorced. Does § 474.420 serve to revoke the provisions in the will in her favor? We conclude yes. We do so by application of the straightforward words of the statute. The legislature decided that a divorce should wipe the slate clean as to the divorced spouse, without the testator having to go to the time and expense of making a new will. We can be sure that in almost every instance a divorced person does not desire a bequest to the former spouse to remain in effect. The legislature realized this, too, and wrote the statute to accomplish what was perceived to be the desired outcome in most divorces.

---

1. Unless otherwise indicated, all statutory citations are to RSMo 1978. Section 474.420 was first enacted in its present form in 1955 (Laws of Mo.1955, p. 385, § 271) and has remained unchanged.

Section 474.420 provides that "If after making a will the testator is divorced, all provisions in the will in favor of the testator's spouse so divorced are thereby revoked", the effect to be "the same as if the divorced spouse had died at the time of the divorce." Such language is plain and unambiguous. By its terms it revokes provisions in a will executed prior to a divorce, as to the divorced spouse. It is not limited to provisions in wills made after marriage. *All* provisions in favor of the divorced spouse are revoked. The statute does *not* say "all provisions of any will made subsequent to the marriage and in favor of the spouse so divorced are thereby revoked." After the part quoted above, the statute goes on to provide "the effect of the revocation shall be the same as if the divorced spouse had died at the time of the divorce." The divorce activates a "constructive death" of the testator's spouse vis-a-vis the will. The anti-lapse statute, § 474.460, does not prevent the lapse of the devise to respondent because the statute applies only when a child, grandchild or other relative of the testator, to whom any estate is devised, predeceases the testator. A wife is not considered a relative within the statute. *McComb v. Lyons*, 487 S.W.2d 16, 18 (Mo. 1972); *Gregory v. Borders*, 345 Mo. 699, 136 S.W.2d 306, 308 (1940). The effect, then, is that upon divorce, the testator's spouse "dies" and the provisions in her favor are revoked. Such an effect takes place without regard to whether the spouse is one who was in the will before she married the testator or not until after she married the testator. In either case, her "death" would make all provisions in her favor void. *McComb v. Lyons, supra* at 18.

"If the language used is plain and unambiguous, there is no reason for any construction . . . ." *United Air Lines, Inc. v. State Tax Commission*, 377 S.W.2d 444, 448 (Mo. banc 1964). *See also St. Louis Southwestern Railway Co. v. Crunk*, 594 S.W.2d 625, 628 (Mo. banc 1980). "When the language of a statute is unambiguous and conveys a plain and definite meaning, the courts have no business to look for or to impose another meaning. . . . If a statute

is unambiguous, a court should regard it as meaning what it says since the legislature is presumed to have intended exactly what it states directly." *State ex rel. Collins v. Donelson*, 557 S.W.2d 707, 710 (Mo.App. 1977); *Pedroli v. Missouri Pacific Railroad*, 524 S.W.2d 882, 884 (Mo.App.1975).

Although the court of appeals opinion relied on *Women's Christian Association v. Brown*, 354 Mo. 700, 190 S.W.2d 900, 904[5] (1945) for the proposition that statutes, such as § 474.420, which are in derogation of the common law, should be construed liberally, *see also* § 1.010, this court in *Steggall v. Morris*, 363 Mo. 1224, 258 S.W.2d 577, 582 (banc 1953), stated, "[W]hether remedial or in derogation of the common law, we have no right to change the meaning of a plain and unambiguous statute." The latter situation is applicable here.

Applying the above principles, we find that the language of the statute is plain and unambiguous and, therefore, requires no construction, liberal or otherwise. The statute provides that if after making a will the testator is divorced (that happened here—after Mr. Bloomer made the will on September 8, 1952, he was divorced on November 12, 1954), "all provisions in the will in favor of the testator's spouse are thereby revoked." The "testator's spouse so divorced" was Mrs. Bloomer (now Mrs. Capps). The fact that she was not his spouse when the will was made does not alter the fact that the provisions in the will under which she seeks to take were provisions in her favor and she was "the testator's spouse so divorced", the divorced spouse who was considered to have "died at the time of the divorce." By virtue of the statute, all provisions in Joseph Bloomer's will in favor of respondent were revoked by operation of law, § 474.420.

Chief Justice Donnelly's dissent cites the catchy language in *Charlton v. Miller*, 27 Ohio St. 298, 22 Am.Rep. 307 (1875) that "If, then, her right to the legacy does not depend upon the marriage, it can not be lost by the divorce, for she can lose no more by the divorce than she gained by the marriage"; or to phrase it another way, she has

to gain something by the marriage before she can lose it by divorce. This is flawed reasoning. It overlooks the fact that a will is ambulatory and revocable until the death of the maker. Marriage does not in itself constitute or amount to a legacy. An effective legacy depends upon there in fact being a legacy in a will and the legacy not having been revoked prior to the death of the testator. So the fact that Mrs. Capps did not gain her legacy by virtue of being married to Mr. Bloomer does not mean she cannot lose the legacy by being divorced. She can always lose the legacy by its being revoked, divorce or no divorce. That is what happened here by virtue of the statute.

We reverse and remand for proceedings not inconsistent with this opinion.

RENDLEN, MORGAN and BARDGETT, JJ., concur.

DONNELLY, C. J., dissents in separate dissenting opinion filed.

WELLIVER and HIGGINS, JJ., dissent and concur in separate dissenting opinion of DONNELLY, C. J.

DONNELLY, Chief Justice, dissenting.

I respectfully dissent.

My view of the proper construction of § 474.420, RSMo 1978, coincides with that of Judge Stockard who wrote an opinion in this case in Division Two before it was transferred to the Court en banc pursuant to Mo.Const. Art. V, § 9. What follows, without quotation marks, is a substantial portion of that opinion.

The first consideration is how § 474.420 should be construed with respect to the issue of whether, by its terms, it revoked the bequest to respondent in deceased's will. Certainly § 474.420 is in derogation of the common law because the common law did not regard divorce as such a changed circumstance from which revocation of a will could be implied. *See* 2 Page on Wills (Bowe-Parker Revision, 1960), § 21.101, p. 523. Such was not the case where a testator married and then had issue of the mar-

riage. A revocation of a will was then effected under the common law, which was codified in this State by former § 468.250, RSMo 1949 (repealed, Laws 1955, p. 385 § A). The only change of circumstance which now revokes a will is that of a divorce as provided in § 474.420. Our first obligation is to determine whether that statute should be strictly construed.

Section 1.010, RSMo 1978, after adopting the common law and statutes and acts of parliament of England, provides by an amendment adopted in 1917 (Laws of Missouri 1917, p. 324), that " * * * no act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common law, or with such statutes or acts of parliament; but all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." Although there are cases since the enactment of the amendment to § 1.010 which announce that statutes in derogation of the common law are to be strictly construed, for example, *Young Women's Christian Ass'n v. LaPresto*, 169 S.W.2d 78 (Mo.App. 1943), and *Watkins v. Wattle*, 558 S.W.2d 705, 711 (Mo.App.1977), the latest pronouncement by this Court is *Women's Christian Ass'n v. Brown*, 354 Mo. 700, 190 S.W.2d 900 (Mo.1945), wherein it was noted that the rule of strict construction (in zoning laws) because they are in derogation of the common law was abolished in this State in 1917.

A strict construction of § 474.420 would require that it be applied indiscriminately to all cases where there was a divorce, and that a provision for the divorced spouse would be revoked by operation of law regardless of the status of the parties at the time the will was made. The statute speaks of a revocation of all provisions in the will in favor of the testator's spouse so divorced, and the fair intendment must be that *the revocation be limited to one who was a spouse at the time the will was made.* That was the situation in *Rookstool v. Neaf*,

377 S.W.2d 402, 409 (Mo.1964), where the statute was applied. Here the facts are different. Testator made his will, in which he named respondent as his sole beneficiary, one year, eight months and eleven days before they were married. If they had not been married, there is no question that respondent would be entitled to take under the will. The fact that the will was made prior to the marriage distinguishes this case from the *Rookstool* case, and compels the conclusion that respondent is the beneficiary of and entitled to take under the will.

The above conclusion is supported by cases from Ohio where, by reason of a statute allowing revocation because of "changed circumstances," the court has by decision adopted the view that provisions of a will for a former wife are impliedly revoked by a divorce, but only where there is a property settlement in connection with the divorce. *See Younker v. Johnson,* 160 Ohio St. 409, 52 Ohio Ops. 320, 116 N.E.2d 715 (1954). There are, however, two Ohio cases involving facts similar to those in this case. In *Charlton v. Miller,* 27 Ohio St. 298, 22 Am.Rep. 307 (1875), the facts were these: On March 13, 1856, testator and Elizabeth Jennings were engaged to be married. On that same day testator made his will giving to Elizabeth Jennings (her then name), $1,000 payable in one year after his death. On the same day they were married. Testator and Elizabeth lived together until the following November when she abandoned him. In 1861, testator obtained a divorce, and he died in 1866. The court adopted appellant ex-spouse's contentions in these words:

"Had the testator died before the marriage contemplated, the right of the plaintiff to the bequest can not be doubted, for the marriage was not a condition precedent to the legacy. Nor is the case different if, after marriage, she ceases to be his wife, for the legacy is not conditioned upon her survivorship as his widow. If, then, her right to the legacy does not depend upon the marriage, it can not be lost by the divorce, for she can lose no more by the divorce than she gained by the marriage."

The second case is *Codner v. Caldwell,* 156 Ohio St. 197, 46 Ohio Ops. 89, 101 N.E.2d 901 (1951). There, by codicil, testatrix, on November 4, 1937, gave her whole estate to Caldwell, whom she married on November 19, 1938. The codicil made no mention of any prospective marital relationship, and testatrix and Caldwell were divorced on September 21, 1948, prior to which they entered into an agreement purporting to be an adjustment and settlement of all property rights between them but in which no mention was made of any testamentary matters. Testatrix died without heirs of her body, and without revoking the will, within five months after the divorce. The court said:

"[M]oreover, Ada DeVinney lived for about five months after the property settlement and divorce, and during that time she did not destroy her will and codicils previously made or execute a new will disposing of her property in a different manner. She was an unmarried woman when she executed the second codicil to her will and died an unmarried woman without having altered it in any way. In such a setting it seems to us that the intention of testatrix to revoke the testamentary disposition of her property previously made is not so plainly exhibited as to warrant the conclusion that there was an implied revocation as a matter of law." 101 N.E.2d at 905.

A reasonable construction of § 474.420 is that it is intended to apply only to the revocation of a will made during a marriage, and we consider this construction to be buttressed by the reasoning of the Ohio cases, *supra.* In this case, the divorce merely restored the *status quo* of being single persons enjoyed by the parties at the time the will was made, and the divorce should not affect the bequest of the will made prior to the marriage, that bequest otherwise being valid. Had the legislature intended that a will, made at *any* time prior to the testator being divorced, would be revoked by a divorce, it could have said so.

I would affirm the judgment.