J. H. HAMLEN & SON, INC. *v.* VARNELL.

4-5874 139 S. W. 2d 1

Opinion delivered. April 1, 1940.

*Rose, Loughborough, Dobyns & House,* for appellant.

*Ike Murry* and *Gaughan, McClellan & Gaughan,* for appellee.

HUMPHREYS, J. On May 18, 1938, appellee filed the following complaint against appellant in the circuit court of Dallas county:

"During the year 1938, defendant owned and operated a stave mill at Carthage, Arkansas, and the agent in charge employed plaintiff to work for defendant in purchasing, inspecting and measuring bolts and staves. It was agreed plaintiff would receive a commission of fifty cents per thousand on all sawed staves manufactured at the mill during his employment; and a commission of $5. per thousand on all split staves 'purchased by or for defendant.

"Plaintiff was employed for seven months until the mill was discontinued at Carthage. During that time defendant sawed in excess of 1,500,000 staves on which plaintiff was due a commission of $750, and the plaintiff purchased 75,000 split staves for defendant on which there is due a commission of $375, making a total of $1,125, less credits amounting to $200, leaving a balance

of $925, with interest at six per cent. from January 1, 1939.''

On June 12, 1939, appellant filed an answer denying the material allegations of the complaint.

On June 21, 1939, appellant filed a cross-complaint against appellee seeking to recover $170.75 balance due it on advances made by it to appellee during the year, 1937, with which to buy bolts for its mill at Carthage, Arkansas, setting out as a part of the cross-complaint the advances made by it to appellee from time to time and crediting him with the price of bolts he purchased from time to time leaving a balance due it of $170.75.

On the same day appellee filed an answer to the cross-complaint in substance, as follows: Plaintiff denies that he is indebted to the defendant in any sum, and alleges he had not been given full credit for timber purchased or staves and bolts supplied to the mill. If it should be found that plaintiff owes defendant the sum of $170.75, or any part thereof, the same should be applied as a credit on the sum which the defendant owes plaintiffs.

The cause was tried upon the pleadings, testimony introduced by the respective parties and instructions of the court resulting in an instructed verdict in favor of appellant on appellee's claim of $750 commission on sawed staves and in a verdict and judgment against appellant in favor of appellee in the amount of $350 commission on split staves and a verdict and judgment against appellant on its cross-complaint for the account due.

Appellant has duly prosecuted an appeal from the verdict and judgment adverse to it and appellee has prosecuted a cross-appeal from the instructed verdict and consequent judgment of the court dismissing his complaint for commissions in the sum of $750 on sawed staves.

Appellee testified in the course of his testimony that under his contract with H. H. Morris, the superintendent of the mill, H. H. Morris had agreed to pay him fifty cents a thousand personally for assisting Morris in producing the sawed staves, and that while Morris

had paid him only $200 for assisting in producing the sawed staves, Morris owed him the balance personally and that he did not look to appellant for the balance due him as commissions by Morris for assisting him in the production of the sawed staves.

Accepting this testimony as true the trial court instructed a verdict against appellee for any balance he claimed against appellant as commissions for assisting Morris in producing the sawed staves and while appellee objected and excepted to the judgment adverse to him in this respect he has abandoned his cross-appeal and states in his brief that ''Appellee elects to waive and not prosecute his cross-appeal.'' So the only question presented for determination by this court is whether there is sufficient substantial testimony to support the verdict and judgment disallowing the claim of $170.75, the balance due on advances made by it to appellee, and whether there is sufficient substantial evidence to sustain the verdict and judgment against appellant for $350 alleged to be due him as commissions for the purchase and production of 75,000 split staves.

We think the undisputed evidence in the record shows that appellant made the advances to appellee to purchase bolts for it in 1937 in the total sum of $2,821.35 and that the total credits against these advancements amounted to $2,650.60 leaving a balance due appellant from appellee of $170.75. Appellant produced every item of cash advanced by it to appellee and every credit it gave appellee against the advancements item by item and while appellee testified in a general way that if he had gotten all the credits due him against the advances, he would owe nothing to appellant on this 1937 account and that there is no substantial evidence denying either the several items advanced or the several credits given. In other words, the testimony reflects without contradiction that appellee owed this balance on the account of 1937. There is no substantial testimony to the contrary to support the verdict disallowing appellant this amount on the 1937 contract. The court should have instructed a verdict in favor of appellant for this amount.

The record reflects that appellant owned a stave mill at Carthage, Arkansas; that on January 1, 1938, H. H. Morris was its general agent in the operation of the mill; that he was placed in charge of the mill; that he kept the time of the employees, made out the pay roll, looked after the yard in general, helped hire and fire the men, turned in the time, figured the checks every two weeks and that when the company mailed back the checks for labor, Morris delivered them to the laborers; that Morris ran accounts at the store and charged same to appellant, and went out and bought bolts to keep the mill running.

The record also reflects that during the operation of the mill Morris received instructions from appellant to purchase split staves and have them brought to the mill and stacked and later loaded and shipped.

There is evidence tending to show that split staves which were made by hand in the woods were much harder to get than bolts out of which to saw staves; that split staves had not been made for many years in that section and that very few if any men knew how to make them; that Varnell, appellee herein, was an old and experienced stave man and that Morris engaged him to go out and see the timber owners and arrange for split staves to be made and to purchase them for delivery at the mill and tending to show that Morris had about all he could do to operate the mill without going into the woods and purchasing the split staves desired by appellant and that in view of this situation Morris employed appellee to procure most of the split staves and get them to the yard or the mill and stack them in such way that each man's staves might be stacked separately and measured as a basis of paying for same. There is testimony tending to show that Varnell worked for three or four months getting these staves made in the woods and hauled to and stacked at the mill and that the purchase price of staves paid to the timber owners or the parties producing them was paid on the estimates and measurements largely made by Varnell. There is testimony also in the record tending to show that certain members of ap-

pellant corporation came to the mill frequently and knew that appellee was performing these services, also testimony to the effect that the price to be paid for the staves was reduced so that Varnell might be paid for his services in the amount of $5 a thousand.

There is also testimony tending to show that Morris was paid nothing for purchasing the 75,000 split staves which were shipped to appellant.

After carefully reading this record we are convinced that there was ample substantial evidence tending to show and from which the jury could have found that Morris was a general agent and that he had apparent authority to employ appellee to assist him in purchasing the split staves that appellant desired and that in employing appellee to do this work he was acting within the scope of his authority.

The issue of whether Morris was acting within the scope of his authority in employing appellee to assist him in procuring the split staves was submitted to the jury under correct instructions. If Morris did not have the express or implied authority to employ appellee to assist him, the net result would be that appellant would pay nothing to either Morris or appellee for all the work they did in procuring and shipping it 75,000 split staves reaping the benefit of the services of these two men free of charge.

Appellant cites the case of *Pine Bluff Heading Company* v. *Bock,* 163 Ark. 237, 259 S. W. 408, as controlling the instant case. In that case Plyer was a special agent for a special purpose. He was authorized to go out and buy all the bolts and logs he could get. The court ruled that he could not delegate this authority to someone else. In the instant case there is substantial testimony tending to show that Morris was a general agent with authority to do about all that was necessary in the production of staves, principally sawed staves, but that in the course of operating the plant he was directed to buy 75,000 split staves. In procuring these split staves the testimony shows that he employed appellee, who was an expert, to secure these staves and that appellee

put in three or four months doing so and that these split staves were stacked on the yard or at the mill, and shipped out to appellant in the same way that sawed staves were shipped and we do not think a fair interpretation of all this evidence is that the purchase of split staves was wholly disconnected from the operation of the plant or that it amounted in law to a special agency as distinguished from a general agency. Rather, a fair interpretation of the testimony is that it tended to show that the production of both kinds of staves was a part of the successful operation of the plant and that Morris was a general agent with power and authority to conduct the business, and that in supervising same he had authority to employ necessary help and assistance to procure split staves as well as to produce sawed staves. Again we think a fair interpretation of the testimony is that the owners of appellant corporation were often on the ground and knew that appellee was performing these services for it. The testimony as a whole warranted the court in submitting the issue of whether Morris was acting within the scope of his authority in employing appellee to assist him in producing split staves for it.

We have examined and read the instructions and find that those given correctly covered the law applicable to the issues involved and that there is substantial evidence to support the verdict and judgment in favor of appellee for $350 for his services in procuring 75,000 staves for it at $5 per thousand, but from this judgment the court should have deducted the $170.75 for the amount appellee owed appellant under the 1937 contract and the judgment should be modified by deducting from $350 the amount of $170.75 and should have rendered a judgment in favor of appellee for the difference or $179.25. We therefore, modify the judgment in this respect and as modified affirm same.