Shelton DAVIS *v.* Ima M. Darby ARINGE

87-1 731 S.W.2d 210

Supreme Court of Arkansas
Opinion delivered June 29, 1987

*Meredith Wineland*, for appellant.

*W. J. Walker* and *Frank A. Poff, Jr.*, for appellee.

TOM GLAZE, Justice. This case is a will contest and involves whether the will of the decedent, Carlton Taylor, was revoked by operation of law, pursuant to Ark. Stat. Ann. § 60-407 (Supp. 1985). The chancellor admitted the will to probate, holding § 60-407 was inapplicable to the situation posed here, and the will provision favoring Ima M. Darby, as residual legatee and devisee, was valid.

The parties have no dispute as to the facts. Taylor had executed a will nominating Darby (now Aringe) as executrix and leaving his entire estate to her, with the exception of a one-dollar bequest to his brother. Thirteen months later, Taylor married Darby, but after two years of marriage, the parties were divorced. Taylor died nineteen months after he obtained the divorce, without having changed his will. Darby petitioned to probate Taylor's will, and Shelton Davis, Taylor's cousin and sole heir, contested the will, claiming it had been revoked under § 60-407 because Taylor had married and divorced Darby since the will had been executed. The chancellor upheld the Taylor will, reasoning that Taylor had named Darby in his will when they were friends, not spouses, and that Taylor had never changed it, even though a significant amount of time had passed (nineteen months) between the parties' divorce and Taylor's death.

Section 60-407 provides:

If after making a will the testator is divorced or the

marriage of the testator is annulled, all provisions in the will in favor of the testator's spouse are thereby revoked. With these exceptions, no will or any part thereof shall be revoked by any change in the circumstances, condition or marital status of the testator; subject, however, to the provisions of § 60-501.

In determining whether § 60-407 applies to the Taylor will, we believe a brief recount and understanding of the history relevant to the doctrine of implied revocation is important. At common law, a woman's will was revoked by her subsequent marriage, but a man's will was not, at least, unless there was both a marriage and birth of issue. Besides having been altered by the Wills Act, 1837, these two rules have been treated differently in American jurisdictions. T. Atkinson, *Law of Wills* § 85 (2d ed. 1953); *see also* 2 W. Bowe & D. Parker, *Page on Wills* §§ 21.89 — 21.91 (3rd ed. 1960). Professor Atkinson, in his treatise on wills, notes a legislative tendency to depart from the old rules. He further observes that a considerable number of jurisdictions, by statute, have provided a man's marriage revokes his will, absolutely, or as to the spouse, unless the will in some way provides to the contrary. Atkinson, *supra.*

Similarly, the law pertaining to divorce and how it impliedly affects a testator's will has experienced change by our state courts and legislatures. In the absence of statute, it is generally agreed in this country that a divorce, unaccompanied by a property settlement, does not revoke the testator's will nor the legacy in the divorced spouse's favor. However, when such a settlement exists and the jurisdiction recognizes generally the doctrine of revocation by operation of law, it is usually held that there is a revocation in favor of the divorced spouse. Atkinson, *supra*; *accord Mosely* v. *Mosely*, 217 Ark. 536, 231 S.W.2d 99 (1950) (discussed statutory treatment and applied rule there was no revocation by operation of law after determining § 60-407 had not yet taken effect and was, therefore, inapplicable to the situation then before the court). Here, again, legislative change has occurred in recent years. Professor Atkinson recognized in his work that, in an increasing number of states, there is legislation providing that subsequent divorce revokes provisions in favor of the spouse. *Atkinson, supra*, citing *Moseley, supra.* One authority explains this new perspective or trend as follows:

Divorce was so rare before modern legislation that it may well be treated as a new case, fairly involving the question of the application of the existing principles of common law and ecclesiastical law to a situation which could rarely, if ever, be presented under the old law for specific adjudication. It seems likely that the courts would treat divorce as a revocation if they felt that it fairly represented the intention of the average testator. The unwillingness of the courts to treat this as a revocation is due in a large part to the fact that [a] testator frequently intends his will to remain in effect in spite of the divorce. The dangers of relying on oral evidence are such that it would be unsafe to adopt a rule making the validity of the will depend upon the actual intention of the testator. The courts are thus driven to a rule which represents the probable intention of the average testator. *It seems very doubtful whether the probable intention of the average testator that a prior will should not remain in force under such circumstances is so clear as to justify the courts in adding this as a new class of revocation by operation of law.*

W. Bowe & D. Parker, *Page on Wills* § 21-101 at 523 (3rd ed. 1960) (emphasis supplied).

 In 1949, our General Assembly enacted § 60-407 in order to avoid some of the legal uncertainties in probate law that had arisen in past years when dealing with marriage and divorce issues and the doctrine of implied revocation. *See* Note, *Wills — Revocation Implied from Divorce of Testator*, 9 Ark.L.Rev. 182 (1955). When applying the plain language of § 60-407 to the instant case, we can only conclude that after Taylor executed his will, that will was not revoked by his marriage to Darby, but his divorce from her did revoke the will provisions made in her favor.

Darby's view or argument in this case is inconsistent in its interpretation and application of § 60-407. She argues that the first sentence of that statute, pertaining to a testator's divorce, applies *only* in instances when the testator made the will *during* his marriage but not before. On the other hand, Darby would apply the second sentence of § 60-407, because that provision upholds the validity and continued effectiveness of a testator's

will even though he marries after it was executed. *Cf. Sughrue* v. *Barlow*, 233 Mass. 468, 124 N.E.2d 285 (1919) (wherein the court revoked the will provision even though testator left everything to the woman he later married because the will did not show on its face the contemplated marriage). While Darby's interpretation of § 60-407 sustains the validity of Taylor's will and its provisions favoring her, that construction is a tortured and inconsistent application of its plain language.

In sum, to adopt Darby's argument would require us to read language into § 60-407 that simply is not there. Clearly, § 60-407 does not provide that its provision revoking a former spouse's bequest or devise upon divorce is dependent upon the testator having made his will during a marriage. To supply such language, we believe, would lend uncertainty and confusion to the law, which runs contrary to the very reason the General Assembly enacted this statute in the first place.

In *In re the Estate of Epperson*, 284 Ark. 35, 40, 679 S.W.2d 792, 794 (1984), we examined §§ 60-407 and -501 (Supp. 1985), and in doing so, made it clear that neither of these statutes makes a distinction concerning wills that predate a marriage and those made after a marriage. If such a distinction should exist, it is the General Assembly's province to make it, not this court's. Accordingly, we hold that § 60-407 applies *in toto* and that the chancellor was in error in holding otherwise.