In re The MARRIAGE OF Phillip R. DUKE and Pamela S. Duke.

Pamela S. DUKE, Respondent–Appellant,

v.

John W. WYNNE, as Executor of the Estate of Phillip R. Duke, Petitioner–Appellee.

No. 32A01–8902–CV–49.

Court of Appeals of Indiana, First District.

Feb. 15, 1990.

Howard S. Young, Jr., Young & Young, Frank E. Spencer, Robert E. Lehman, Michael F. Singer, Indianapolis, for respondent-appellant.

William M. Evans, G. Pearson Smith, Jr., Stephen E. Arthur, Bose McKinney & Evans, Charles F. Cremer, Jr., Indianapolis, for petitioner-appellee.

ROBERTSON, Judge.

The respondent-appellant Pamela S. Duke is appealing from the trial court ruling denying her Ind. Trial Rule 60(B) motion to vacate a void judgment. She was seeking to void the dissolution decree from her marriage to the petitioner Phillip R. Duke. Phillip R. Duke died about two weeks after the dissolution with the resulting substitution of the executor of his estate as the appellee.

Prior to Pamela's motion, in a proceeding in the probate court, the estate filed a "petition to construe will and to determine the rights of the parties." By this petition, the estate sought a ruling that upon the parties' dissolution, the bequests in Phillip Duke's will to Pamela were revoked. The court denied Pamela's petition to dismiss the estate's petition. Because of the consequence for the estate of the disposition of Pamela's motion to set aside the divorce decree, we ordered that Pamela be allowed to bring an interlocutory appeal from the probate court's judgment denying her motion to dismiss the petition to construe the will, and that the interlocutory appeal be consolidated with the appeal from the dissolution court.

With respect to that part of the appeal questioning the validity of the divorce decree, the procedural facts show that Phillip R. Duke filed his petition for dissolution on May 8, 1986. The petition for dissolution omitted any allegation as to the date of separation of the parties. Counsel for Pamela S. Duke entered his appearance on June 4, 1986. On July 7, 1986, the trial court heard the case and entered the decree of dissolution and approved the agreed alimony and property settlement.

On April 28, 1988, Pamela S. Duke filed the motion to vacate the dissolution decree which was denied on that date. At that time the trial court found that the dissolution hearing was held on the 60th day after the filing of the petition for dissolution and that Pamela S. Duke had waived the issue about the date of separation by executing the property settlement on July 2, 1986,

and failing to raise the issue at the earliest opportunity.

In the five issues raised in this appeal Pamela contends that the overruling of the motion to vacate the judgment is contrary to law in that the trial court wrongfully determined:

A. I.C. 31-1-11.5 does not require that the parties had separated before or at the time of filing the petition for dissolution of marriage, or during any period of time prior to the final hearing.

B. I.C. 31-1-11.5-4(a), requiring that the petition for dissolution set forth "the date on which the parties separated" is directory, not mandatory.

C. Any failure of a petitioner to allege, or of the Court to find, the fact or date of separation would go to the Court's jurisdiction of the particular case, not its subject matter jurisdiction.

D. Respondent waived jurisdiction of the cause by not raising the jurisdictional issue at the earliest opportunity, and by submitting to the Court a property settlement agreement and requesting that the Court approve the agreement as settling issues between the parties.

E. For the purpose of determining the period of sixty days which, under I.C. 31-1-11.5-8(a) must pass between the filing of a petition for dissolution and the final hearing thereon, the day on which the petition is filed is not counted and the day of the final hearing is counted.

The argument section of Pamela S. Duke's brief combines these five issues into two major arguments. Under both sections, she asserts generally that the dissolution of marriage is a special statutory action and the statutory requirements are jurisdictional and cannot be waived.

■ Her first argument is that the decree is void because the petition for dissolution did not contain an averment of the date that the parties separated. The statute providing that the dissolution petition set forth the date on which the parties separated is IND. CODE 31-1-11.5-4(e). While the date of actual separation has significance for the court's consideration of a just and reasonable division of the par-

ties' property, *Hunter v. Hunter* (1986), Ind.App., 498 N.E.2d 1278, we agree with the Executor that the failure to set forth the date of separation would not deprive the trial court of subject matter jurisdiction, or of power to decide the particular case. Certainly I.C. 31-1-11.5-4 itself does not preclude the court's jurisdiction to hear the case in absence of some of the averments to be set forth in the petition. Separation of the parties before the final hearing was proved, and there is no question regarding the sufficiency of the proof, or the sufficiency of the evidence showing the marriage was irretrievably broken. Therefore, we need not determine whether the petitioner in a dissolution need prove separation occurred before the final hearing.

■ Pamela's other argument is that jurisdiction was lacking because 60 days had not elapsed between filing the dissolution petition and the final hearing. *See* I.C. 31-1-11.5-8; T.R. 6(F). The purpose of section 8 is to set up a "cooling-off" period after the initial filing. *Mendenhall v. Mendenhall* (1946), 116 Ind.App. 545, 64 N.E.2d 806, 809 (under prior statute). The legislature omitted in the present statute language in earlier codifications declaring that "any trial had or decree rendered in any such case in less than such sixty (60) days shall be null and void."

The petition for dissolution was filed on Thursday, May 8, 1986, and the final hearing was held on Monday, July 7, 1986. July 7th was the 60th day following the filing of the petition. Pamela had not objected to the court's hearing the dissolution on July 7th. Pamela asserts that the court could not have held a final hearing until the 61st day, thereby allowing 60 days to expire between the filing and final hearing. There is no authority in Indiana which settles the question whether the dissolution statute and T.R. 6(F) compel the court to calculate the waiting period in a manner other than that prescribed in T.R. 6(A)— where the first day is not counted and the last day is counted.

In any case, even if the court proceeded to final hearing one day too soon, we be-

lieve that the supreme court's explication of subject matter jurisdiction in *Mishler v. County of Elkhart* (1989), Ind., 544 N.E.2d 149 puts to rest Pamela's contention that the divorce decree is void, on either of the two grounds she asserts.

In *Mishler,* the supreme court granted transfer, vacating the court of appeals' decision which had held that because the trial court did not have the authority to order the Elkhart County Plan Commission to rezone certain property, it did not have jurisdiction, and its judgment was therefore void and could be collaterally attacked.

While the supreme court agreed that a judgment rendered without jurisdiction may be collaterally attacked, it found fault with the appellate court's appraisal of the trial court's rezoning order as one "without jurisdiction." To render a valid judgment, a court must possess jurisdiction over the subject matter and over the parties. Subject matter jurisdiction is generally defined as the power to hear and determine cases of the general class to which the proceedings then before the court belong, and courts of general jurisdiction are presumed to have subject matter jurisdiction. *Id.* at 151.

> Once a court has acquired subject matter and personal jurisdiction, "the remaining subjects of inquiry [become] the subjects of judicial action, but [are] not questions necessarily incident to the exercise of jurisdiction. Jurisdiction must necessarily exist before such questions can be examined and determined." Even an erroneous judgment is voidable only through direct appeal. *Snelson v. State* (1861), 16 Ind. 29, 32 ("power to decide at all, necessarily carries with it the power to decide wrong as well as right."). *The fact that a trial court has erred in exercising its jurisdiction does not mean it lacked jurisdiction.* As Justice Arterburn wrote for this Court:
>
> Far too often there is an inclination in a law suit to attempt to convert a legal issue into one of "jurisdiction" and from that point contend all actions of the court are void, and that the question of jurisdiction may be raised at any time or that the proceedings are subject to collateral attack and are a matter for original writs in this court.
>
> *J.I. Case & Co. v. Sandefur* (1964), 245 Ind. 213, 217–218, 197 N.E.2d 519, 521.

*Mishler,* 544 N.E.2d at 152. (Emphasis supplied.) The worst that can be said of the trial court's rendering the decree is that it erred in exercising its jurisdiction before the passing of the 60th day. Even if that was error, it could not have deprived the Hendricks Superior Court of jurisdiction to hear the particular class of cases to which the case belonged, dissolution cases. Accordingly, the judgment was not void, and could not be attacked collaterally. Pamela waived the issue of the court's jurisdiction of the particular case because she failed to make a timely objection and failed to take up the issue on direct appeal. *Mishler,* 544 N.E.2d at 152.

Having affirmed the dissolution court's finding that the divorce decree is valid, we proceed to determine the issues raised in the probate court.

Those two issues are:

I. Does our revocation by divorce statute apply when the will was executed before the testator marries?

II. Did the court err in overruling Pamela's motion to dismiss the amended petition to construe the will where it was filed more than five months after the will was offered for probate?

## I.

I.C. 29–1–5–8 provides:

If after making a will the testator is divorced, all provisions in the will in favor of the testator's spouse so divorced are thereby revoked. Annulment of the testator's marriage shall have the same effect as a divorce as hereinabove provided. With this exception, no written will, nor any part thereof, can be revoked by any change in the circumstances or condition of the testator.

Phillip Duke executed his last will on January 12, 1984. Item VI of the will provides: "PAMELA S. PEARSON and I intend to marry and the bequests to her in this will shall be considered to be made to

her as my wife if we become married. If for any reason we should not become married, then the gifts made to her in this will shall lapse and fail." Pamela received several bequests by Phillip's will.

Two days after the will was executed, on January 14, 1984, Phillip and Pamela were married. As we stated before, the parties were divorced July 7, 1986. Phillip died July 22, 1986, without having changed or revoked the will.

Pamela hopes to avoid operation of I.C. 29-1-5-8 by arguing that it does not apply in this case because Phillip was not married to her when he executed the will. Because the statute does not account for that situation, it is inapplicable, she asserts. Indiana courts have not had occasion to address this issue. However, considering the plain language of the statute, and having perused persuasive authority in other jurisdictions, we conclude that our revocation by divorce statute applies equally when the will is executed before the testator's marriage.

In *Matter of Estate of Bloomer* (1981), Mo., 620 S.W.2d 365, the court, passing on identical statutory language in the Missouri code, stated:

> Such language is plain and unambiguous. By its terms it revokes provisions in a will executed prior to a divorce, as to the divorced spouse. It is not limited to provisions in wills made after marriage. All provisions in favor of the divorced spouse are revoked. The statute does not say "all provisions of any will made subsequent to the marriage and in favor of the spouse so divorced are thereby revoked."

*Id.* at 367.

The court found no reason to construe the statute liberally or strictly, or according to any other rule of construction, where the language is plain and unambiguous. *Id.* The reasoning in *Bloomer* compelled the same result in these cases: *Russell v. Johnston* (1982), Iowa, 327 N.W.2d 226; *Re Will of Reilly* (1985), 201 N.J.Super. 306, 493 A.2d 32; *Davis v. Aringe* (1987), 292 Ark. 549, 731 S.W.2d 210. The revocation statute also has been applied in two cases

in which the testator had executed the will before marrying the after-divorced spouse, but the issue was not presented as squarely as in the foregoing authorities: *McFarlen v. McFarlen* (1976), Tex.Civ.App., 536 S.W.2d 590; *Conascenta v. Giordano* (1962), Fla.App., 143 So.2d 682. The fact that an Oklahoma case, *Re Estate of Carroll* (1987), Okla.App., 749 P.2d 571, is contrary to the above authorities does not sway us. The court held that the revocation by divorce statute "assumes a marital relationship involving parties who are presumed to be the natural object of each other's bounty when the will is executed." While we differ with the Oklahoma court's rationale, we discard *Carroll* foremost because it is factually distinctive from this case. The will in *Carroll* was made two years before the parties married, negating the inference that the testator was relying upon any "status-based" relationship, namely marriage—which status is the concern of the statute. Even the *Carroll* court would likely hold that, under the facts in the instant case, the statute would apply, because Phillip expressly conditioned the bequests to Pamela on the realization of their marriage.

We conclude that, by its plain and unambiguous terms, I.C. 29-1-5-8 applies regardless whether the testator is married to the living former spouse at the time he makes the will. Accordingly, the probate court did not err in finding that provisions in Phillip's will in favor of Pamela were revoked by operation of I.C. 29-1-5-8.

## II.

On April 18, 1988, the Estate filed an "amended petition to construe the will and to determine the rights of the parties." Because the will was admitted to probate in July, 1986, the Estate's petition was filed well after the five-month deadline. The probate court denied Pamela's motion to dismiss the Estate's petition directed to its timeliness.

The Estate requested that the court determine that the bequests to Pamela were revoked by operation of law, with the result that the Trustee under an irrevocable

trust agreement would become the sole residuary legatee. Pamela asserts that the Estate's petition is in the nature of a will contest, and so is untimely under I.C. 29–1–7–17.

We do not agree that the Estate's petition is in the nature of a will contest. The petition to construe the will was apparently brought under I.C. 29–1–6–5:

> The court in which a will is probated shall have jurisdiction to construe it. Such construction may be made on a petition of the personal representative or of any other person interested in the will; or, if a construction of the will is necessary to the determination of an issue properly before the court, the court may construe the will in connection with the determination of such issue. When a petition for the construction of a will is filed during administration of the estate, notice of the hearing thereon shall be given to interested persons. If the estate has been closed prior to the filing of such petition, notice shall be given as in civil actions.

The above statute appears to allow filing of the petition more than five months after the will is offered for probate, since it contemplates filing even after the estate is closed. This case is analogous to the issue presented in *Haskett v. Haskett* (1975), 164 Ind.App. 105, 327 N.E.2d 612. In *Haskett,* the court held that the petition of a pretermitted heir, brought under I.C. 29–1–6–6, and allowed "at any time during the administration of ... decedent's estate" was not in the nature of a will contest. The pretermission statute did not seek to void the will; rather, it had only the effect of removing the heir's intestate share from the testate property in the estate, leaving the will operative in all other respects. *Id.* at 616.

The same reasoning applies to the petition here. A will may be contested for these grounds affecting the validity of the will:

(1) the unsoundness of mind of the testator;

(2) the undue execution of the will;

(3) that the will was executed under duress or was obtained by fraud; or

(4) any other valid objection to the will's validity or the probate of the will.

I.C. 29–1–7–17.

The petition to construe the will was not brought to contest the validity of the will or to resist its probate. Rather, the estate sought a ruling respecting the effect of revocation by operation of law on the bequests to Pamela. It was not subject to the five-month deadline in I.C. 29–1–7–17, and the probate court did not err in overruling Pamela's motion to dismiss.

Because no other objections to the probate court's order are taken in this appeal, we affirm the order of the probate court in all respects. The Hendricks Superior Court is also affirmed.

BAKER and HOFFMAN, JJ., concur.