78 A.3d 344

Sam NICHOLS, Personal Representative
of the Estate of Jesse W. Suiters

v.

Suzanne BAER and Nancy Burton, Personal Representatives
of the Estate of Virginia Lee Suiter.

No. 33, Sept. Term, 2011.

Court of Appeals of Maryland.

Oct. 22, 2013.

Demetrios G. Kaouris (Miles & Stockbridge, P.C., Easton, MD), on brief, for petitioner.

Bruce F. Bright (Ayres, Jenkins, Gordy & Almand, P.A., Ocean City, MD; Cynthia B. MacDonald of MacDonald Law Office, LLC, Salisbury, MD), on brief, for respondents.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, BELL *, JOHN C. ELDRIDGE (Retired, Specially Assigned), LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

BELL, C.J. (ret.).

Md.Code (1974, 2011 Repl.Vol.) § 4–105 of the Estates & Trusts Article ("E & T"),[1] as relevant to this case, provides:

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. This provision of Maryland law was initially promulgated by Ch. 106 of the Laws of 1964, and codified as Maryland Code (1957, 1964 Repl.Vol.) Art. 93, § 351(d), Revocation of wills or codicils. It provided:

"No will or codicil in writing, nor any clause thereof, shall be revoked otherwise than as provided herein:

"(a) By some other will, codicil, or other writing, executed as provided in § 350, altering or revoking said will or codicil.

"(b) By burning, cancelling, tearing or obliterating the same, by the testator himself, or by some other person in his presence and by his express direction and consent.

"(c) By the marriage of the testator coupled with the birth, adoption or legitimation of a child by him, provided such child or a descendant thereof survives the testator; and all wills and codicils executed prior to such marriage shall be revoked.

"(d) By a final decree of absolute divorce of a testator and his spouse, granted subsequent to the execution of the testator's will or codicil and after June 1, 1964; and all provisions in said will or codicil relating to the divorced spouse, and only as to such provi-

"A will, or any part of it, may not be revoked in a manner other than as provided in this section.

* * *

"(4) By an absolute divorce of a testator and his spouse or the annulment of the marriage, either of which occurs subsequent to the execution of the testator's will; and all provisions in the will relating to the spouse, and only those provisions, shall be revoked unless otherwise provided in the will or decree."

Accurately characterized as a revocation by divorce statute, by it terms, "unless otherwise provided in the will or decree," a divorce revokes a pre-existing will's provisions "relating to" the spouse.

There is no disagreement as to the ultimate intent of the General Assembly in enacting this statute, to effect, in the absence of a contrary intention expressed by the testator, the revocation of all provisions of a testator's will, made prior to the divorce of the testator and his or her spouse or the annulment of the marriage, relating to the testator's spouse. *Friedman v. Hannan,* 412 Md. 328, 345, 987 A.2d 60, 70 (2010). The issue this case presents is focused on the implementation of that intent.[2] We must decide what the General

---

sions, shall be revoked unless otherwise provided in the will or codicil or the decree."

By Ch. 3, § 1 of the Laws of 1969, Maryland law relating to decedents' estates was entirely revised, *see Stewart v. Whitehurst,* 268 Md. 589, 591, 303 A.2d 393, 394 (1973), and, as a result of Code revision, recodified as the Estates & Trusts Article, *see* Ch. 3, § 1 of the Laws of 1969, with Section 351, revised to its present form, becoming § 4–105. *See* Md.Code (1974, 2011 Repl.Vol.) § 4–105 of the Estates & Trusts Article.

2. Virginia Lee Suiters, the respondent, does not disagree with this statement of the purpose of Md.Code (1974, 2011 Repl.Vol.) § 4–105 of the Estates & Trusts Article. Accepting that as the purpose, she simply argues:

"There is no requirement under Maryland's revocation by divorce statute—as distinguished from the Uniform Probate Code revocation by divorce statute—that in order for a spousal legacy to remain effective after divorce, either the Will or the Decree contain 'magic words' providing so in an explicit manner."

Assembly intended when it provided for an exception to revocation to be "provided in the will or decree," whether the pre-existing will or the subsequent decree must acknowledge, and then disavow, the effect of the subsequent divorce, or whether an inference, drawn from the will and the decree, suffices.[3]

The facts necessary to resolve this case are straight-forward and largely undisputed. Jesse W. Suiters, the decedent, and Annie Lee Suiters, the respondent, were married in 1965. They separated in 1996, executing, on July 29, 1996, a Voluntary Separation Agreement and Property Settlement Agreement ("separation agreement"). In addition to addressing the property settlement between the parties, the separation agreement addressed the parties' inheritance rights and provided for the agreement's future effect on any subsequent divorce proceedings. As to the former, Paragraph 11 provided:

"11. *Release of Inheritance Rights.* Except as otherwise provided herein, each party waives all right, title, and interest in and to the estate of the other, of every nature

---

**3.** This is not how Sam Nichols, Personal Representative of the Estate of Jesse W. Suiters the petitioner, posed the question, although he does raise the issue. Of the four questions he presented:

"Did the Court of Special Appeals err in its interpretation and application of Section 4–105(4) of the Estates and Trusts Article when it refused to apply the statute to revoke benefits to the divorced spouse under the Decedent's Will, which was executed prior to the divorce?

"Did the Court of Special Appeals err whe it found that the exceceptions to Section 4–105(4) applied, where the circuit court, after hearing the evidence at trial concluded that the exceptions did not apply?

"Did the Court of Special Appeals err in finding that the Decedent intended to benefit Suiters when there was no evidence of the Decedent's intent at the time of the divorce and where the Separation Agreement between Suiters and Decedent did not address whether Suiters would benefit under the Will if there was a subsequent divorce?

"Did the Court of Special Appeals err in making factual findings that were not made by the circuit court and relying upon evidence cited by the Orphans' Court and the decision of the Orphans' Court that were not admitted into evidence before the circuit court at the *de novo* hearing?"

We need only, and do, address the first.

and description, including all right to administer same. Each party likewise waives all right to dower or courtesy, if any, in and to the property now owned by the other or property to be acquired in the future. Notwithstanding the mutual releases set forth in this paragraph, either party to this Agreement may, by his or her Last Will and Testament, give, devise or bequeath any part or all of his or her estate to the other."

Paragraph 17 dealt with the enforceability of the separation agreement. It provided:

"17. *Incorporation.* With the approval of any court of competent jurisdiction in which any divorce proceedings may now be pending, or which may hereafter be instituted, this Agreement shall be incorporated in any decree of absolute divorce which may be passed by said Court. In the event the Court shall fail or decline to incorporate this Agreement or any provisions thereof in said decree, when and in that event the parties, for themselves and their respective heirs, personal representatives and assigns, agree that they will, nevertheless, abide by and carry out all of the provisions thereof. It is further agreed that, regardless of whether said Agreement or any party thereof is incorporated in any such decree, the same shall not be merged in said decree; but said Agreement and all terms thereof shall continue to be binding upon the parties."

The parties were divorced by Decree of Absolute Divorce, entered May 25, 2006, in proceedings initiated by the respondent and in which the decedent did not appear. The decree incorporated, but did not merge, the separation agreement.

Almost three (3) years earlier, on June 18, 2003, the decedent executed his Last Will and Testament. As pertinent to this case, it provided:

"All the rest, residue and remainder of my estate and property, whether real, personal, or mixed, howsoever acquired and wheresoever situated, including any and all property with respect to which I have a power of appointment or power of disposition, I give, devise, and bequeath

unto Virginia Lee Suiters, if she survives me. In the event that Virginia Lee Suiters does not survive me or in the event that she shall die with me in, or as a result of, a common accident or common disaster, or shall die under circumstances which make it doubtful or uncertain as to whether she or I died first, or which make it difficult or impossible to determine which of us died first, then, in either of such events, I give, devise and bequeath all such residuary property to my sister Mary Ann Nichols, per stirpes and not per capita. If my sister, Mary Ann Nichols has predeceased me, then I give, devise, and bequeath that share equally to my nephews and nieces, Sam Nichols, Elaine Nichols and Nancy Nichols, per stirpes and not per capita."

The respondent had been designated personal representative and also as the decedent's attorney in fact by a Power of Attorney, executed by the decedent.

The decedent died shortly after the divorce and his will was admitted to probate. The central issue of those proceedings was the applicability of E & T § 4–105(4). The Circuit Court for Wicomico County, after a hearing, held that the revocation by divorce provision did apply and that the exceptions did not apply,[4] resulting in the revocation of the provisions relating to

---

**4.** The Orphans' Court for Wicomico County had reached the opposite conclusion, having refused to revoke the provisions of the will favorable to the respondent. Upon the timely appeal filed by the petitioner, who had been appointed personal representative, instead of the respondent, by that court, the case was removed to the Circuit Court for Wicomico County, where it was heard, and decided, *de novo.* Md.Code (1973, 2013 Repl.Vol.) § 12–502 of the Courts & Judicial Procedures Article. That section provides:

"(a)(1)(i) Instead of a direct appeal to the Court of Special Appeals pursuant to § 12–501 of this subtitle, a party may appeal to the circuit court for the county from a final judgment of an orphans' court.

"(ii) The appeal shall be heard de novo by the circuit court.

"(iii) The de novo appeal shall be treated as if it were a new proceeding and as if there had never been a prior hearing or judgment by the orphans' court.

"(iv) The circuit court shall give judgment according to the equity of the matter.

the respondent. The Court of Special Appeals, in an unreported opinion, reversed the judgment of the Circuit Court, holding that the revocation of § 4–105(4) was not triggered because the exceptions it recognizes applied. It reasoned:

"Pursuant to the plain meaning of the words, "unless otherwise provided in the ... decree," we believe that, as long as the decree provides language that shows the intent of the parties to provide for a legacy to a spouse regardless of their marital status, the exception to the revocation of a will by divorce or annulment under Section 4–105(4) has been invoked."

The petitioner filed a petition for writ of certiorari, which this Court granted. *Nichols v. Suiters,* 420 Md. 81, 21 A.3d 1063 (2011). For the reasons that follow, we shall reverse the judgment of the intermediate appellate court.

The petitioner construes § 4–105(4) as providing a straightforward, bright-line standard: after the divorce of the testator and his or her spouse, all provisions in the testator's preexisting will automatically are revoked, in the absence of a provision in that will or in the decree of divorce, stating a contrary intent. Thus, as he sees it, "[t]he intent of the Decedent is not relevant to the application of Section 4–105(4). . . ." He argues:

"Thus, Section 4–105(4) of the Estates and trusts Article of the Maryland Code applies to revoke, as a matter of law, the provisions in the Will that benefit Suiters because the Will was executed prior to the divorce. This is true even though the Will was executed after the Separation Agreement but before the divorce. The only relevant facts to the applica-

---

"(2) This subsection does not apply to Harford County or Montgomery County.

"(b)(1) An appeal pursuant to this section shall be taken by filing an order for appeal with the register of wills within 30 days after the date of the final judgment from which the appeal is taken.

"(2) Within 30 days thereafter the register of wills shall transmit all pleadings and orders of the proceedings to the court to which the appeal is taken, unless the orphans' court from which the appeal is taken extends the time for transmitting these pleadings and orders."

tion of Section 4–105(4) are the date of the divorce and the date of the execution of the Will. The date of the divorce is subsequent to the date of the execution of the Will, and therefore any provision benefitting Suiters was revoked by operation of law."

The petitioner relies on the pre–1990 version of § 2–508,[5] the Uniform Probate Code provision relating to the revocation of will provisions by divorce and cases interpreting the Uniform Probate Code provision or provisions patterned after, or similar, to it. *See, e.g., Friedman,* 412 Md. 328, 987 A.2d 60 (2010);[6] *McGuire v. McGuire,* 275 Ark. 432, 631 S.W.2d 12 (1982); *Papen v. Papen,* 216 Va. 879, 224 S.E.2d 153 (1976); *Matter of Will of Reilly,* 201 N.J.Super. 306, 493 A.2d 32 (1985); *Estate of Reeves,* 233 Cal.App.3d 651, 284 Cal.Rptr. 650 (1991); *Matter of Estate of Rayman,* 495 N.W.2d 241 (Minn.App.1993); *Matter of Estate of Knospe,* 165 Misc.2d 45, 626 N.Y.S.2d 701 (N.Y.Sur.1995).

In any event, the petitioner maintains, citing *Gibboney v. Wachovia Bank, N.A.,* 174 N.C.App. 834, 622 S.E.2d 162, 164– 65 (2005) and *Buchholz v. Storsve,* 740 N.W.2d 107, 112 (S.D.2007), the exceptions set out in § 4–105(4) simply do not apply under the facts of this case. This is so, in the case of

---

**5.** Section 2–508 of the Uniform Probate Code, as relevant, provided: "If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, conservator, or guardian, unless the will expressly provides otherwise."
This provision is now § 2–804 of the Uniform Probate Code, which is somewhat broader, both in the exception and revocation prongs.

**6.** The petitioner recognizes that *Friedman v. Hannan,* 412 Md. 328, 987 A.2d 60 (2010) did not address directly the issue this case presents, the interpretation of § 4–105(4) and, in particular the phrase, "unless otherwise provided in," in the context of the divorced spouse, only a related issue, whether the "relating to" language extended beyond the spouse to include his or her relatives. Nevertheless, he finds *Friedman* "significant" in "demonstrat[ing] the deference that an appellate court must give the trial court and the important public policy reflected in Section 4–105(4)."

the will, he submits, because the will, in effect, does no more than merely name the respondent as a beneficiary. It does not "make reference to the fact that a subsequent divorce will not alter the spouse's status as a beneficiary under the will." With regard to the divorce decree, the petitioner argues that, because the separation agreement never became a part of the divorce decree, that exception also does not apply.[7]

The respondent sees the case and the issue entirely differently. Noting that the language of the Maryland statute—"unless otherwise provided in the will or decree"—differs from that of the Uniform Probate Code—"unless the will expressly provides otherwise"[8]—and the cases on which the petitioner relies—e.g. "unless otherwise specifically provided in the will," *Gibboney,* 622 S.E.2d at 164—she argues that they have different meanings. While the revocation by divorce statute under the Uniform Probate Code may require it, "[t]here is no requirement under Maryland's revocation by divorce statute

---

7. Essential to this argument is the continuing vitality of *Johnston v. Johnston,* 297 Md. 48, 465 A.2d 436 (1983), as good law, for which proposition the petitioner relies on its being cited by two of our recent cases: *Kamp v. Dep't of Human Servs.,* 410 Md. 645, 651 n. 5, 980 A.2d 448, 451 n. 5 (2009) and *Janusz v. Gilliam,* 404 Md. 524, 539 n. 10, 947 A.2d 560, 569 n. 10 (2008). In *Kamp,* we construed *Johnston,* to mean that "where 'the agreement does not include a non-merger clause and it is incorporated in the decree, the agreement is superseded by the decree.'" 410 Md. at 651 n. 5, 980 A.2d at 451 n. 5 (quoting *Johnston,* 297 Md. at 56, 465 A.2d at 440, and citing *Wallace v. Wallace,* 1 Haw.App. 315, 619 P.2d 511, 513 (1980)); *Bowman v. Bennett,* 250 N.W.2d 47, 50 (Iowa 1977). In *Janusz,* we cited *Johnston* for the proposition that an agreement incorporated, but not merged, into a judgment, survives as a separate and independent contractual arrangement between the parties. 404 Md. at 539 n. 10, 947 A.2d at 569 n. 10 (quoting *Johnston,* 297 Md. 48, 56, 465 A.2d 436, 440).

As we shall see, the respondent takes the view that the separation agreement, because it was incorporated but not merged into the decree, was "made [ ] a part of the decree as if it were fully set forth, thus approving the non-merger clause." *Johnston,* 297 Md. at 58, 465 A.2d at 441 (emphasis omitted). Given the view we take of this case, we need not resolve the conflict.

8. As revised and codified as § 2-804, the exception language now reads, "[e]xcept as provided by the express terms," the language of *Buchholz v. Storsve,* 740 N.W.2d 107, 110 (S.D.2007).

... that, in order for a spousal legacy to remain effective after divorce, either the Will or the Decree contain 'magic words' providing so in an explicit manner." To impose such a requirement onto § 4-105(4), which she characterizes as unambiguous, the respondent submits, would be to add words to it and thereby alter and expand its plain meaning. She concludes that the General Assembly, by "adopt[ing] broader but no less unambiguous statutory language" to that used in the Code provision, intended that the testator's wishes with regard to his divorced spouse "be construed from all, the language and provisions of the will and the decree."

The respondent believes, in any event, that both of the exceptions to revocation by divorce apply in this case. She argues that the testator "otherwise provided in" the divorce decree, explaining that the separation agreement, in particular paragraphs 11 and 17, was incorporated, but not merged in the decree, and thereby became a part of it, thus entitling her to benefit under the decedent's pre-existing will, notwithstanding their subsequent divorce. She continues:

"In other words, based on the clear intent of Jesse Suiters as expressed unequivocally in the Separation Agreement (specifically, his intent that the terms of the Separation Agreement survive any divorce that may thereafter occur, including its clear validation of the parties' testamentary bequests to one another, regardless of the status of their marriage) and the incorporation into the Decree of that expressed intent, his bequest to Virginia Suiters was not revoked by operation of law under § 4-105(4) of the Estates & Trusts Article, when the Decree was entered."

That the will also "otherwise provided" was reflected, the respondent proffers, both in the decedent's designation of the respondent as his personal representative and in his naming her as his sole beneficiary and in the manner in which he did it. In the former case, in item 1 of the will, the designation was as his "wife," while in the latter, in item 2 of the will, without characterizing the respondent as his wife, he stated simply the condition that she survive him.

This is a matter involving statutory construction. Although we recently considered § 4–105(4), and construed one of its clauses, in *Friedman,* 412 Md. at 345–46, 987 A.2d at 70, we have not had the occasion to construe it in the context of a spousal bequest. At issue in *Friedman* was the meaning of the term, "relating to the divorced spouse," upon which the survival of bequests, contained in the decedent's will, which was made after the marriage but before the divorce, to the relatives of the decedent's spouse depended. We sustained the construction of the trial court, affirmed by the Court of Special Appeals, that the clause "related to the divorced spouse." *Id.* at 344, 987 A.2d at 70. We concluded, in that regard, that "it is permissible for an Orphans' Court or circuit court to find that a will provision is 'relating to' the former spouse within the meaning of Section 4–105(4) if it considers that the provision was primarily motivated by the marriage or given at the request of the spouse." *Id.* at 345, 987 A.2d at 70.

In reaching that decision, we addressed the purpose of § 4–105(4) and made observations pertinent thereto, which, as we shall see, are instructive to the issue *sub judice:*

"We are not persuaded by Friedman's argument that the Circuit Court erroneously reversed the burden of proving that the gift to his wife's relatives was conditioned on the continuance of the marriage. We interpret ET Section 4–105(4) to be similar to a burden-shifting law. We conclude that in creating the automatic revocation of will provisions 'relating to' a former spouse, the General Assembly recognized two pertinent features of divorce. First, divorce usually results in a separation of assets that were jointly owned, thus reducing each spouse's assets available to bequeath to his or her own family. Second, divorce is often acrimonious, with the acrimony spilling over to the former spouse's family. Also, it is common in writing wills during a marriage that two spouses divide their assets between their respective family members because they have agreed that is fair. Even without acrimony, this viewpoint is likely to change upon divorce. In enacting Section 4–105(4), the Legislature created a remedy to avoid unintended conse-

quences for people who neglect to change their wills upon divorce."

*Friedman,* 412 Md. at 345, 987 A.2d at 70. As we shall also see, this is important to our resolution of this case, since prior to 1964 and the inclusion of the revocation by divorce provision at issue here, the statute governing the revocation of wills provided:

> "No will in writing devising lands, tenements or hereditaments, or bequeathing any goods, chattels or personal property of any kind, as heretofore described nor any clause thereof, shall be revocable otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing or obliterating the same, by the testator himself or in his presence, and by his direction and consent; but all devises and bequests so made shall remain and continue in force until the same be destroyed by burning, cancelling, tearing or obliterating the same by the testator or by his direction, in manner aforesaid, unless the same be altered by some other will or codicil in writing or other writing of the devisor signed as hereinbefore said in the presence of two or more witness declaring the same,"

Md.Code (1957, 1963 Cumulative Sup.) Art. 93 § 351, and, by its terms, as indicated, was the exclusive way to revoke a will.[9]

Provisions similar to § 4–105(4), namely § 2–508[10] and statutes modeled after, or derived from, it, have been construed with uniformly consistent results. The courts construing

---

**9.** In 1964, the Maryland Legislature also repealed and re-enacted Art. 93 § 351 to include the former Art. 93 § 352, now ET § 4–105(3), which provided for the implied revocation of a will if the testator, after having disposed of the whole of his estate at the time his will was made, remarried and had children by his second wife.

**10.** *In Matter of Will of Reilly,* 201 N.J.Super. 306, 493 A.2d 32, 33 (1985), referencing this section of the Uniform Probate Code, the court said:

> "The gist of this statute is to incorporate into law the presumed intent of a testator that any disposition in a will benefitting a spouse should be terminated in the event of the dissolution of their marriage."

these statutes have concluded that their purpose is to reflect the reality that divorce is a significant and motivating factor in the testamentary decision-making of a testator, *Papen,* 224 S.E.2d at 155 ("In enacting Code § 64.1—59 the obvious purpose of the General Assembly was to incorporate into statute the presumed intent of a testator that any provision in his will for the benefit of his spouse be terminated in the event of their divorce."); *Matter of Bloomer's Estate,* 620 S.W.2d 365, 367 (Mo.1981) ("The legislature decided that a divorce should wipe the slate clean as to the divorced spouse, without the testator having to go to the time and expense of making a new will. We can be sure that in almost every instance a divorced person does not desire a bequest to the former spouse to remain in effect. The legislature realized this, too, and wrote the statute to accomplish what was perceived to be the desired outcome in most divorces."); *Reilly,* 493 A.2d at 33–34 (same); *Rayman,* 495 N.W.2d at 243 ("Regardless of the testator's relationship to the former spouse at the time of the will's execution, whether it is a friendly relationship years prior to the marriage or a marital relationship, a subsequent divorce is a significant change in circumstances between the testator and the former spouse."); *Reeves,* 284 Cal.Rptr. at 654 ("The Legislature changed the law to protect a spouse who neglects to change his or her will following divorce or annulment."), and to prevent needless litigation and the necessity for complex and fact-based analysis of the decedent's intent. *Knospe,* 626 N.Y.S.2d at 704. As to the latter, the Supreme Court of Iowa elaborated:

> "The clear purpose of [the Iowa revocation by divorce statute] is to provide an automatic revocation of provisions in a will in favor of a spouse after a marriage is dissolved. The legislature obviously recognized that due to the change in the family structure new moral duties and obligations may have evolved subsequent to the execution of the will, and that due to the turmoil of a dissolution an automatic revocation is in the best interest of the testator."

*Russell v. Johnston,* 327 N.W.2d 226, 229 (Iowa 1982). Despite providing for an exception, *Knospe* characterized the

effect of the revocation by divorce statute as "a conclusive presumption, which by its nature is irrebuttable." 626 N.Y.S.2d at 704.

From these purposes, these courts concluded that the statutes were "plain and unambiguous." *Davis v. Aringe*, 292 Ark. 549, 731 S.W.2d 210, 212 (1987) ("[T]o adopt [the residual legatee's] argument would require us to read language into [the statute] that simply is not there."); *Reilly*, 493 A.2d at 35 ("On its face, the statute makes no such distinction."); *Bloomer*, 620 S.W.2d at 367 ("[W]e find that the language of the statute is plain and unambiguous and, therefore, requires no construction, liberal or otherwise."). *See Reeves*, 284 Cal. Rptr. at 653–54; *In re Marriage of Duke*, 549 N.E.2d 1096, 1100 (Ind.App.1990). The cases also concluded that, for the revocation by divorce statutes to be applicable, only the factors prescribed in the statute need be established, not the intent of the testator/decedent, *see Davis*, 731 S.W.2d at 212; *Reilly*, 493 A.2d at 36; *Reeves*, 284 Cal.Rptr. at 654; *Duke*, 549 N.E.2d at 1100, and that the exception became applicable only if the will expressly so provides. *See Gibboney*, 622 S.E.2d at 165 (construing "unless otherwise *specifically* provided [dissolution of marriage by divorce] revokes *all provisions* in the will in favor of the testator's former spouse," to mean "that unless the testator expressly indicates in his will that even if he divorces his spouse she would remain a beneficiary, the former spouse is denied any testate disposition"); *Buchholz*, 740 N.W.2d at 112 ("We hereby interpret the statute to require that the governing instrument contain express terms referring to divorce, specifically stating that the beneficiary will remain as the designated beneficiary despite divorce.").

The purpose of § 4–105(4), that we identified in *Friedman* is consistent with the purpose of § 2–508 and the statutes derived from it, as reflected in the cases construing them. That purpose, coupled with the observations we made in *Friedman* relative to the likely, perhaps, presumed, impact of divorce on testamentary dispositions, mirror the conclusion of the cases, *Reeves*, 284 Cal.Rptr. at 654; *Bloomer*, 620 S.W.2d.

at 369, that the Legislature's intent was to protect a testator who neglects to change his or her will following divorce or annulment, and, thus, are consistent with, and support, the further conclusion that such protection is best achieved by an automatic revocation of the relevant provisions of the testator's pre-existing will. *Russell*, 327 N.W.2d at 229. Given the identity of the purpose of § 2–508 of the Uniform Probate Code, and the statutes derived from it, and § 4–105(4), cases interpreting the former are, we believe, persuasive authority as to the meaning of the latter. *See Roach v. Comptroller of Treasury*, 327 Md. 438, 445, 610 A.2d 754, 757 (1992).

In *Friedman*, we reviewed the guiding principles that underlie statutory construction:

"In statutory interpretation, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional, or part of the Rules. We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions, and our analysis ends."

412 Md. at 337, 987 A.2d at 65–66 (quoting *People's Ins. Counsel Div. v. Allstate Ins. Co.*, 408 Md. 336, 351–52, 969 A.2d 971, 979–80 (2009)) (quotation marks and citations omitted). *See Johnson v. Mayor & City Council of Baltimore*, 430 Md. 368, 377, 61 A.3d 33, 38 (2013) (quoting *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 473, 784 A.2d 569, 572 (2001) ("[I]f the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end.")); *Marriott Employees v. Motor Vehicle Admin.*, 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997); *Frank v. Baltimore County*, 284 Md. 655, 661, 399 A.2d 250, 254 (1979); *Polomski v. Baltimore*, 344 Md. 70, 75–76, 684 A.2d 1338, 1340 (1996).

Applying these principles to the interpretation of § 4–105(4), we conclude that its language is clear and unambiguous and, moreover, consistent with the purpose the General Assembly sought to achieve in enacting it. That purpose is, as we explained in *Friedman*, 412 Md. at 345, 987 A.2d at 70, "to avoid unintended consequences for people who neglect to change their wills upon divorce." It is achieved by prescribing a clear and decisive rule that applies to will provisions that precede the divorce of the parties. Accordingly, we construe § 4–105(4) consistent with the construction given § 2–508 and the statutes derived from it by the courts that have considered them. Thus, we reiterate what we said in *Friedman*, that its effect is the immediate revocation of provisions in the pre-existing will relating to the divorced spouse, 412 Md. at 345, 987 A.2d at 70, and we further hold that revocation is effective upon the occurrence of the triggering factor, the subsequent divorce, therein enumerated, unless there is "provided in" the will or the decree a statement to the contrary, that the decedent intended the bequest even though they were divorced. This is necessary if the legislative purpose of avoiding unintended consequences, is to be realized; anything less would not ensure that the consequence of the divorce was foreseen and intended. That, as here, in the separation agreement, there is a general reference to the right of either spouse to make a bequest to the other in his or her will and a provision calling for the incorporation, but not merger, of the separation agreement into the decree of divorce and, in the will, the reference in the residuary clause to the respondent, without referencing her status, as "wife," do not suffice as "otherwise provided in the will or decree." While the collective effect may be to permit an inference as to the testator's intent, it does not establish that intent or even clearly and unequivocally state it.

To be sure, § 4–105(4) differs from the revocation by divorce provision of the Uniform Probate Code and those statutes modeled after it; unlike those statutes, it does not include the word "expressly," or similar language, in the exception clause. On that basis, the respondent argues that § 4–105(4)

must mean that something less is required to avoid the automatic revocation consequence than a clear and direct statement that the divorce did not change the testator's donative intent toward his or her former spouse. That also is the position of the Court of Special Appeals, which characterizes § 4–105(4) as materially different from the Uniform Probate Code model. In effect, notwithstanding that Maryland has not adopted the Uniform Probate Code, by accepting the construction given it by the courts that have considered it, the respondent and the intermediate appellate court seek to limit the General Assembly's legislative options as to the wording of its statutes and, as a result, this Court's interpretive options. We reject such an approach. While we shall give the revocation by divorce statutes adopted by our sister states the construction placed on them by their courts, *Roach*, 327 Md. at 445, 610 A.2d at 757 (citing *Elmendorf v. Taylor*, 10 Wheat. 152, 23 U.S. 152, 159–160, 6 L.Ed. 289, 292 (1825)), we do not accept that any such construction defines, or is decisive with regard to, the General Assembly's intent in enacting its revocation by divorce statute. We hold, therefore, given the intent we have identified, and the fact that, despite the difference in wording, our statute is not substantially different, that the difference in the wording of § 4–105(4) and the statutes modeled after the Uniform Probate Code does not require that they have different meanings.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.*

HARRELL, BATTAGLIA and ELDRIDGE, JJ., dissent.

BATTAGLIA, J., dissenting, in which HARRELL, J. and ELDRIDGE, J., join.

I respectfully dissent. The majority holds that a bequest of a residuary estate to a former wife, by name but not by status, in the former husband's will, is revoked by operation of law by

Section 4–105 of the Estates and Trusts Article of the Maryland Code, which states in relevant part:

A will, or any part of it, may not be revoked in a manner other than as provided in this section . . .

(4) *Divorce or Annulment.* By an absolute divorce of a testator and his spouse or the annulment of the marriage, either of which occurs subsequent to the execution of the testator's will; and all provisions in the will relating to the spouse, and only those provisions, shall be revoked unless otherwise provided in the will or decree.

Maryland Code (1974, 2001 Repl.Vol.), Section 4–105(4) of the Estates and Trusts Article.[1] Section 4–105(4), however, does not operate to revoke the bequest because the husband bequeathed property to his former wife as an individual, after he and his wife had agreed in their separation agreement that they could bequeath property to one another.

Jesse and Virginia Suiters were married in 1965 and lived together until 1996, when they agreed to voluntarily separate; their separation agreement provided that either party could bequeath his or her property to the other notwithstanding their mutual releases: "either party to this Agreement may, by his or her Last Will and Testament, give, devise or bequeath any part or all of his or her estate to the other." In 2003, Jesse Suiters, while he and Virginia remained married, albeit living separately, executed his Last Will and Testament, bequeathing his residuary estate to Virginia under the ensuing terms:

All the rest, residue and remainder of my estate and property whether real, personal or mixed, howsoever acquired and wheresoever situate, including any and all property with respect to which I may have a power of appointment or power of disposition, I give, devise and bequeath unto **Virginia Lee Suiters,** if she survives me . . . . (emphasis in original).

---

**1.** All references to Section 4–105(4) are to Section 4–105(4) of the Estates and Trusts Article, Maryland Code (1974, 2001 Repl.Vol.) in effect at the time of Jesse's death in 2006, unless otherwise noted.

Approximately three years later, the Suiters were granted an absolute divorce and within months, Jesse died. The will was admitted for probate in the Orphans' Court for Wicomico County, and Jesse Suiters's nephew, Samuel Nichols, petitioned to be the Personal Representative of the estate, with Nichols and his two siblings identified as the residuary beneficiaries. The Orphans' Court appointed Nichols as Personal Representative; Virginia challenged the appointment, asserting that she was the residuary beneficiary and that Nichols and his siblings were contingent beneficiaries. The Orphans' Court agreed with Virginia, and held that the bequest was not revoked under Section 4–105(4) because, "[t]he Separation Agreement specifically preserved the right to 'give, devise or bequeath any part or all of his or her estate to the other,' despite specifically waiving the right to administer" and Jesse exercised that right in his will.

In a de novo appeal, the Circuit Court for Wicomico County concluded that, because the Suiters had divorced, Virginia's bequest was revoked by operation of law under Section 4–105(4), and Nichols and his siblings were the appropriate beneficiaries. The Circuit Court stated that, "what seems to be a forward looking provision in a Separation Agreement whether or not it's incorporated or merged in a Decree" might not satisfy the exception language of Section 4–105(4). Virginia appealed, and the Court of Special Appeals reversed the Circuit Court, determining that Virginia was the appropriate residuary beneficiary, because, "[a]ccording to [Section] 8–105 [of the Family Law Article of the Maryland Code], a separation agreement that is incorporated, but not merged ... becom[es] part of the divorce decree ... and thus the language of such separation agreement can be considered in determining the applicability of the exception clause, 'unless otherwise provided in the ... decree,' of E & T [Section] 4–105(4)." (citation omitted).

The majority determines that, although there is language in Jesse's will supporting the distribution of the residuary estate to Virginia without a designation of her as his wife, the bequest was revoked when Jesse and Virginia divorced, be-

cause Jesse's will did not contain specific reference to the divorce in his bequest. I disagree, essentially because the Suiters's separation agreement provided that Jesse or Virginia could bequeath property to one another, even were they to divorce, and thereafter Jesse executed his will containing the bequest to Virginia, *without* identifying her as his wife.

My disagreement is premised upon the words of Section 4–105(4) that sets forth that provisions in a will relating to a spouse are revoked by an absolute divorce *"unless otherwise provided in the will or decree."* In reaching my conclusion I rely on what the Legislature did not adopt in formulating and revising Section 4–105(4), in 1964 and 1969: the more restrictive language of the Uniform Probate Code that limited the ability of a testator to bequeath property to his former wife only in express language.

In this regard, the legislative history of the present verbiage of Section 4–105(4) is instructive. The precursor to Section 4–105(4) was adopted in 1884, and provided for revocation "by some other will or codicil in writing, or other writing declaring the same, or by burning, canceling, tearing or obliterating the same . . . ." 1884 Maryland Laws, Chapter 293. In 1937, Article 93, Section 338, was added to provide for revocation "by the subsequent marriage of the testator coupled with birth, adoption or legitimation of a child by him." 1937 Maryland Laws, Chapter 303. In 1964, the operative provision of current Section 4–105(4) was added to the Estates and Trusts Article:

By a final decree of absolute divorce of a testator and his spouse, granted subsequent to the execution of the testator's will or codicil and after June 1, 1964; and all provisions in said will or codicil relating to the divorced spouse, and only as to such provisions, shall be revoked unless otherwise provided in the will or codicil or the decree.

1964 Maryland Laws, Chapter 106. In 1969, current Section 4–105(4) was amended to recognize annulment as an impetus for revocation and remains largely unchanged. 1969 Maryland Laws, Chapter 3.

On a parallel track between 1964 and 1969 was the development of the Model Probate Code, which in 1964 was the same as that which was enacted in 1946:

Change in circumstances; divorce. If after making a will the testator is divorced, all provisions in the will in favor of the testator's spouse so divorced are thereby revoked. With this exception, no written will, nor any part thereof, can be revoked by any change in the circumstances or condition of the testator.

Model Probate Code Section 53 (1946). By its terms, a divorce automatically revoked all bequests to a former spouse.

During the period from 1962 to 1969 the National Conference of Commissioners on Uniform State Laws began studying and revising the provisions of the Uniform Probate Code, which culminated in circulating in 1967 what was termed the Boulder Draft of the Uniform Probate Code, which contained the following language regarding revocation of any disposition of property in a will:

Revocation by Divorce; No Revocation by Other Changes of Circumstances. If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, [any provision conferring a general or special power of appointment on the former spouse,] and any nomination of the former spouse as executor, trustee, [conservator,] or guardian, unless the will expressly provides otherwise.

Special Comm. on Uniform Probate Code, National Conference of Comm'rs on Uniform State Laws, *Third Working Draft Uniform Probate Code With Comments* 1, 96 (Nov. 1967) (including additions as finalized in Uniform Probate Code Section 2–508 (1969)[2]); Lawrence H. Averill, Jr., *An Eclectic History and Analysis of the 1990 Uniform Probate Code,* 55 Alb. L.Rev. 891, 895–96 (1992).

---

**2.** All references to UPC Section 2–508 are to Section 2–508 of the Uniform Probate Code (1969).

In Maryland, a Governor's Commission to Review and Revise the Testamentary Law of Maryland (the "Henderson Commission") was appointed in 1965 to advise the General Assembly on revisions to Maryland testamentary laws; in 1968 the Henderson Commission recommended against adoption of the Uniform Probate Code in its totality and rejected the revocation upon divorce provision of the Boulder Draft in favor of the Maryland provision regarding revocation, which was more expansive. *Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland, Article 93 Decedents' Estates,* i, v, 48–49 (1968).[3]

The convergences of the revisions of the Uniform Probate Code and that of the Maryland revocation revision differentiate my analysis from the majority, because the majority relies mainly upon cases that interpret state statutes that either adopt in totality the Uniform Probate Code or in the specific case of provisions relating to revocation in the will or decree have adopted the Uniform Probate Code's more restrictive language. *See In re Rayman,* 495 N.W.2d 241, 243 (Minn.Ct. App.1993) (noting that Minnesota Statute Section 524.2–508 (1990) adopted UPC Section 2–508); 1974 Minnesota Laws, Chapter 442 (adopting the Uniform Probate Code in its entirety); *see Buchholz v. Storsve,* 740 N.W.2d 107, 111 (S.D.2007) (determining that South Dakota Codified Laws Section 29A–2–804 (1995) adopted UPC Section 2–508); 1995 South Dakota Laws, Chapter 167 (adopting the Uniform Probate Code in its entirety).

In the other cases upon which the majority also relies, the respective state legislatures adopted the language of UPC Section 2–508 in provisions mandating revocation upon divorce. *In re Reilly,* 201 N.J.Super. 306, 493 A.2d 32, 33 (1985), citing *In re Bloomer,* 620 S.W.2d 365 (Mo.Sup.Ct.1981) (noting that New Jersey Statutes Section 3B:3–14 (1977) and

---

**3.** In our recent opinion of *Friedman v. Hannan,* we recognized "that the Henderson Commission was aware of the UPC, or that it considered itself free of any duty to recommend the UPC provisions to the General Assembly." 412 Md. 328, 348, 987 A.2d 60, 72 (2010).

Missouri Revised Statutes Section 474.420 (1978) replicated UPC Section 2–508, which requires an express statement); *In re Reeves*, 233 Cal.App.3d 651, 284 Cal.Rptr. 650, 653 (1991) (noting that California Probate Code Section 6122 (1991) is the same in substance as UPC Section 2–508, which requires intent contrary to revocation must be expressly provided); *In re Knospe*, 165 Misc.2d 45, 626 N.Y.S.2d 701, 704 (N.Y.Surr.Ct.1995) (emphasizing that New York Estates, Powers and Trusts Section 5–1.4 (1979) was patterned on UPC Section 2–508 and determining, therefore, that express terms were required); *Papen v. Papen*, 216 Va. 879, 224 S.E.2d 153 (1976) (interpreting Virginia Code Section 64.1–59 (1968, 1973 Repl.Vol.), which mirrors the language of UPC Section 2–508 with only slight variations in word placement).[4]

Rather, Section 4–105(4) only requires "unless otherwise provided." In cases in which we have interpreted similar language in other circumstances, we have interpreted "unless otherwise provided," as requiring only a manifestation of intent. Clearly, a testator's intent is a fact-based inquiry especially when the phrase "otherwise provided" is the applicable language. *See, e.g., Friedman*, 412 Md. at 339, 987 A.2d at 67 (providing that a determination of the decedent's intent is a "fact-based inquiry," when interpreting whether a particular bequest was "related to" a former spouse under the broad language of Section 4–105(4)). In our inquiry, we consider the language of the bequest and may also consider "the situation of the testator" as well as "the relationships between the testator and his beneficiaries" to devise intent. *Id.* at 340, 344, 987 A.2d at 67, 70, citing *Robinson v. Mercantile Trust Co. of Balt.*, 180 Md. 336, 339, 24 A.2d 299, 300 (1942).

In *Pfeufer v. Cyphers*, we considered "otherwise provided" in a bequest as it applied to Section 11–109 of the Estates and

---

**4.** The only case that the majority cites in which the Uniform Probate Code may not be implicated is *Gibboney v. Wachovia Bank, N.A.*, in which the testator bequeathed property to his wife without any delineation of her name. This case is clearly inapposite, where Virginia was identified by her name, only, without appellation as wife. 174 N.C.App. 834, 622 S.E.2d 162, 164 (2005).

Trusts Article, Maryland Code (1974)[5] providing that, "[the federal and state] tax shall be apportioned among all persons interested in the estate ... [e]xcept as otherwise provided in the will, or other controlling instrument. . . ." 397 Md. 643, 650 n. 6, 651, 919 A.2d 641, 645 n. 6, 646 (2007). We discerned that despite the fact that Section 7–203(b)(2) of the Tax–General Article, Maryland Code (1988, 2004 Repl.Vol.) exempted three of the four residuary beneficiaries from paying inheritance tax, the testator had designated that inheritance tax should be paid prior to apportionment, therefore being sufficiently "otherwise provided," because of "the supremacy of the intention of the testator or testatrix, as reflected in the language of the will. . . ." *Id.* at 650–51, 919 A.2d at 646, citing *Johnson v. Hall,* 283 Md. 644, 648, 392 A.2d 1103, 1106 (1978).

In the present case, Jesse and Virginia Suiters agreed to separate under express terms that permitted either to bequeath property to the other, which Jesse, upon death, exercised in his will to Virginia, without attributing his bequest to "wife." As a result, I would hold that his bequest was not revoked by operation of law under Section 4–105(4) because he otherwise had provided for Virginia as an individual, rather than as his wife. I would, therefore, have affirmed the Court of Special Appeals.

Judges HARRELL and ELDRIDGE authorize me to state that they join in this dissenting opinion.

---

**5.** The current version of Section 11–109 of the Estates and Trusts Article, Maryland Code (1974) is found in Section 7–308 of the Tax–General Article, Maryland Code (1988, 2010 Repl.Vol.).